[No. S022475. July 29, 1993.]

In re WILLIAM JOHN CLARK on Habeas Corpus.

758

COUNSEL

Eric S. Multhaup, Gail R. Weinheimer, Jean R. Sternberg, Denise Anton and Lynne Shatzkin Coffin, under appointments by the Supreme Court, for Petitioner.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Morris Beatus and Dane R. Gillette, Deputy Attorneys General, for Respondent.

## OPINION

**BAXTER, J.**—William John Clark petitions for a writ of habeas corpus, claiming that the judgment pursuant to which he is confined under a sentence of death is invalid. We conclude that his unjustified delay in presenting his claims bars consideration of the merits of the petition.

An exception to this bar would be recognized if, as a result of the defects of which petitioner complains, the conviction and/or sentence were shown to constitute a fundamental miscarriage of justice. A fundamental miscarriage of justice is established by showing: (1) that error of constitutional magnitude led to a trial that was so fundamentally unfair that absent the error no reasonable judge or jury would have convicted the petitioner; (2) that the petitioner is actually innocent of the crime or crimes of which he was convicted; (3) that the death penalty was imposed by a sentencing authority which had such a grossly misleading profile of the petitioner before it that absent the error or omission no reasonable judge or jury would have imposed a sentence of death; or (4) that the petitioner was convicted under an invalid statute.

The allegations of the petition and supporting exhibits fail to demonstrate that petitioner could establish the existence of any of these exceptions, however. We shall, therefore, deny the petition for writ of habeas corpus.

## I. PRIOR PROCEEDINGS

On April 5, 1990, this court affirmed a judgment of conviction of petitioner, and the imposition of the death penalty, after a jury found petitioner guilty of first degree murder with a special circumstance of murder in the commission of arson (Pen. Code, §§ 189, 190.2, subd. (a)(17)(viii)),[1] two counts of attempted murder (§§ 664/187), arson (§ 451, subd. (a)), and rape (§ 261, subd. (a)(2)). (*People* v. *Clark* (1990) 50 Cal.3d 583 [268 Cal.Rptr. 399, 789 P.2d 127].)

There was no question that petitioner committed the acts which led to his conviction. On January 6, 1982, he threw one bucket of gasoline into the dining area of the home of David and Ava Gawronski, and another into the couple's bedroom, where both were sleeping. He ignited the gasoline with lighted highway flares. David Gawronski suffered fatal burns in the ensuing flash fire. Ava Gawronski was burned so severely that she was hospitalized for 10 months, and suffered permanent injuries and disfigurement, including the loss of her fingers and nose.

---

[1]All statutory references herein are to the Penal Code unless otherwise noted.

Petitioner admitted these acts, contesting only the prosecution's claim that he intended to kill the Gawronskis and their infant daughter, who was rescued unharmed from another bedroom. His intent, he explained, was only to drive the couple out of the home so that he could shoot and kill David Gawronski with the shotgun he carried with him, while Ava Gawronski watched. His purpose was to demonstrate, by causing her to suffer, how much Ava Gawronski, a licensed social worker and marriage and family counselor, had hurt him when she terminated the counseling she had been giving him. He admitted, however, that when he threw the flare to ignite the gasoline, he knew he was throwing it into the victims' bedroom.

The death penalty verdict was returned after a retrial of the penalty phase at which petitioner represented himself. The original jury had been unable to reach a penalty verdict.

None of the experts who examined petitioner diagnosed him as incompetent or mentally ill. The second penalty jury heard testimony by a psychologist, Dr. John Hatcher, that petitioner had a "borderline personality" between neurotic and psychotic. Petitioner had told Dr. Hatcher that he felt morally justified under his own ethical code, and had stated that he could not have asked that his act of revenge turn out any better than it had. Dr. Linda Weinberger, also a psychologist, testified that petitioner had expressed a desire to kill two other persons, and had said he would consider finding a person about to be released from prison to do this for him.

The judgment of death was imposed on February 1, 1985. Counsel on appeal was appointed by this court on March 5, 1985, the record on appeal was filed on November 21, 1986, and briefing was completed on December 26, 1989. At the time the judgment was affirmed on April 5, 1990, however, no petition for writ of habeas corpus challenging the validity of that judgment had been filed.

Almost one year later, petitioner first sought relief by habeas corpus, filing his first such petition on March 15, 1991. No explanation for the delay in seeking relief was offered in the petition. The first petition alleged: (1) that this court had denied petitioner due process and violated the ex post facto guarantees of the state and federal Constitutions in construing the arson special circumstance (§ 190.2, subd. (a)(17)(viii)); (2) that, because petitioner was incompetent, petitioner had been denied due process, effective assistance of counsel, and protection against cruel and unusual punishment at the penalty phase of his trial when the trial court acceded to petitioner's request to represent himself; and (3) that this court had failed to apply the test of reversible error required by *Chapman* v. *California* (1967) 386 U.S.

18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065], in ruling on the appellate claims of error.

After receiving opposition, and denying petitioner's request for time to supplement the petition with additional factual allegations and supporting documentation, this court concluded that the petition failed to state a prima facie case entitling petitioner to relief. The petition was denied on May 15, 1991.

## II. THE SECOND PETITION

On August 16, 1991, this second petition was filed.

Petitioner explains the filing of another petition on the basis that his additional claims were "developed" in response to the decision of the United States Supreme Court in *McCleskey* v. *Zant* (1991) 499 U.S. 467 [113 L.Ed.2d 517, 111 S.Ct. 1454].

In this petition, petitioner challenges the validity of the judgment on the grounds that in the proceedings leading to his conviction and sentence he was denied due process, a fair trial, effective assistance of counsel, and protection against cruel and unusual punishment. These claims, as characterized by petitioner, are set forth below.

1. Failure to Recuse. The office of the Los Angeles County District Attorney, members of whose staff prosecuted petitioner, failed to recuse itself after hiring as a deputy district attorney an attorney who had represented petitioner during pretrial proceedings until October 19, 1982, when he withdrew as petitioner's counsel. This, petitioner argues, denied him due process and the right to counsel because the prosecution thereby became privy to more than one year of confidential communications, and successor counsel was denied access to the attorney as a source of information, strategy, or testimony.

2. Effective Counsel. Petitioner claims he was denied his right to effective assistance of counsel for the reasons set forth below:

a. Petitioner's counsel failed to investigate petitioner's competency to represent himself at the retrial of the penalty phase or to request the appointment of separate counsel to undertake that investigation, did not defer to petitioner's desire to testify at the penalty retrial and thus did not

remove one of the bases for petitioner's election to represent himself, and did not bring to the attention of the court information tending to negate petitioner's competency to represent himself or even to proceed to the penalty trial. Had counsel adequately warned petitioner of the dangers of self-representation, accommodated petitioner's concerns, brought to the attention of the court information tending to show that petitioner's election was not knowing and voluntary, or investigated petitioner's competency and developed evidence to establish that petitioner could not make a knowing and intelligent decision, petitioner would have enjoyed his right to representation by effective counsel at the penalty retrial.

b. Petitioner's counsel failed to investigate and present evidence of petitioner's conforming conduct, lack of disciplinary record, and the positive image jail personnel held of him during the three years prior to trial, and to present this as mitigating evidence at the penalty phase.

c. Petitioner's counsel failed to investigate and present evidence other than the testimony of petitioner and his parents regarding petitioner's background and upbringing. Numerous other witnesses were available, including members of petitioner's family, and his school and social contacts; in addition, documentary materials were also available. All of these would have had a mitigating effect.

d. Petitioner's counsel erroneously advised him to submit to examination by a psychologist selected by the prosecution, failed to monitor the examination, and failed to insist on a verbatim recording of the examination.

3. Due Process/Fair Trial. Petitioner was denied due process and a fair trial by the prosecutor's "false implication" to the jury that a penalty retrial was required by law. This implication assertedly undermined petitioner's testimony that letters he sent to one of his victims and to her father were not sent for the purpose of causing the recipients further emotional suffering, but in order to provoke a retrial.

4. Due Process/Fair Trial/Cruel and Unusual Punishment. Petitioner contends that he was denied due process, a fair trial, and freedom from cruel and unusual punishment in that:

a. Testimony was erroneously introduced regarding the effects of the offenses on a surviving victim and her family. This prejudicial evidence, petitioner alleges, was improperly discussed and relied on by members of the jury as nonstatutory aggravating evidence.

b. The jury discussed and considered the belief that a sentence of life without possibility of parole would not be adequate to ensure incarceration of petitioner and that imposition of the death sentence was necessary to protect society.

c. The jury was misled regarding its sentencing responsibilities and discussed and believed that only evidence that would mitigate the gravity of the crime itself could be properly considered.

d. There was invidious and systematic discrimination by prosecutors in seeking the death penalty, and by jurors in imposing the death penalty, on the basis of the victims' race, social status, and gender. Petitioner was, he alleges, singled out for capital treatment because of the characteristics of the victims.

e. The imposition of the death penalty on petitioner was capricious because penologically relevant characteristics of the offense and his background are no more serious or deserving of the death penalty than those in a far greater number of similar cases with noncapital dispositions.

### III. Limitations on Habeas Corpus Relief

As is apparent from a review of the above claims and the history of this case, many of the grounds asserted for relief are restatements or reformulations of arguments made and rejected on appeal or in the prior habeas corpus petition, while others are claims that could and should have been made on appeal. To the extent that new grounds for relief are stated, the petition fails to demonstrate that these claims could not have been asserted in the prior petition, or that any of the claims could not have been presented by a petition filed in conjunction with the appeal.

Before considering the possible merit of any claim, it is therefore appropriate to review the decisional and statutory law governing collateral attacks on judgments of conviction by petition for writ of habeas corpus. In addition, because no clear guidelines have emerged in our past cases, we consider when departure from those rules is warranted.

### A. Limitations on Collateral Attack.

The rules governing postconviction habeas corpus relief recognize the importance of the "Great Writ," an importance reflected in its constitutional

status,[2] and in our past decisions. Indeed, the writ has been aptly termed "the safe-guard and the palladium of our liberties" (*In re Begerow* (1901) 133 Cal. 349, 353 [65 P. 828]) and is "regarded as the greatest remedy known to the law whereby one unlawfully restrained of his liberty can secure his release . . . ." (*Matter of Ford* (1911) 160 Cal. 334, 340 [116 P. 757].) The writ has been available to secure release from unlawful restraint since the founding of the state. (Cal. Const. of 1849, art. I, § 5; Stats. 1850, ch. 122, p. 134. See, e.g., *People* v. *Smith* (1850) 1 Cal. 9; *Ex parte The Queen of the Bay* (1850) 1 Cal. 157.)

■■■■ Our cases simultaneously recognize, however, the extraordinary nature[3] of habeas corpus relief from a judgment which, for this purpose, is presumed valid (see *People* v. *Shipman* (1965) 62 Cal.2d 226, 232 [42 Cal.Rptr. 1, 397 P.2d 993]; *In re Bell* (1942) 19 Cal.2d 488, 500 [122 P.2d 22]), the importance of finality of judgments (see *In re McInturff* (1951) 37 Cal.2d 876 [236 P.2d 22]), and the interest of the state in the prompt implementation of its laws. (See, e.g., *In re Arguello* (1969) 71 Cal.2d 13, 17 [76 Cal.Rptr. 633, 452 P.2d 921].)

■■■■ Procedural rules have been established by our past decisions to govern petitions for writs of habeas corpus. Such rules are necessary both to deter use of the writ to unjustifiably delay implementation of the law, and to avoid the need to set aside final judgments of conviction when retrial would be difficult or impossible. (See *In re Dixon* (1953) 41 Cal.2d 756, 761 [264 P.2d 513] [Even when the claim involves an asserted denial of constitutional rights, "[i]t would obviously be improper to permit a collateral attack because of claimed errors in the determination of the facts after

---

[2]California Constitution, article I, section 11: "Habeas corpus may not be suspended unless required by public safety in cases of rebellion or invasion."

The text is unchanged from that of article I, section 5 of the Constitution of 1849, and of former section 5 of the present article I of the 1879 Constitution.

While habeas corpus is recognized in article I, section 9, clause 2 of the United States Constitution, that provision does not oblige the states to afford a habeas corpus remedy. (*Pennsylvania* v. *Finley* (1987) 481 U.S. 551, 557 [95 L.Ed.2d 539, 547, 107 S.Ct. 1990].)

[3]Habeas corpus is an "extraordinary remedy." (*In re Connor*, (1940) 16 Cal.2d 701, 709 [108 P.2d 10].) "[I]t may not be invoked where the accused has such a remedy under the orderly provisions of a statute designed to rule the specific case upon which he relies for his discharge. This would be an abuse of process, as his relief under the remedy provided by the statute would accomplish all that he was seeking and all that the writ of *habeas corpus* was ever designed to accomplish, to wit, the discharge of the accused." (*In re Alpine* (1928) 203 Cal. 731, 739 [265 P. 947, 58 A.L.R. 1500].) "The writ of *habeas corpus* was not created for the purposes of defeating or embarrassing justice, but to promote it." (*Id.*, at p. 744.)

expiration of the time for appeal when evidence may have disappeared and witnesses may have become unavailable."].)[4]

■ It has long been required that a petitioner explain and justify any significant delay in seeking habeas corpus relief. "[I]t is the practice of this court to require that one who belatedly presents a collateral attack such as this explain the delay in raising the question." (*In re Swain* (1949) 34 Cal.2d 300, 302 [209 P.2d 793].)[5] In *Swain*, we noted that such explanation was "particularly necessary" where a petitioner has made prior attacks on the validity of the judgment without raising the issues. (*Ibid.*) The burden is one placed even on indigent petitioners appearing in propria persona, and is not met by an assertion of counsel that he or she did not represent the petitioner earlier.[6]

■ It is also the general rule that issues resolved on appeal will not be reconsidered on habeas corpus (*In re Waltreus* (1965) 62 Cal.2d 218, 225 [42 Cal.Rptr. 9, 397 P.2d 1001]), and, " 'in the absence of special circumstances constituting an excuse for failure to employ that remedy, the writ will not lie where the claimed errors could have been, but were not, raised upon a timely appeal from a judgment of conviction.' (*In re Dixon*, 41 Cal.2d 756, 759 [264 P.2d 513]; in accord *People* v. *Morrison*, 4 Cal.3d 442, 443, fn. 1 [93 Cal.Rptr. 751, 482 P.2d 663]; *In re Black*, 66 Cal.2d 881, 886-887 [59 Cal.Rptr. 429, 428 P.2d 293]; *In re Shipp*, 62 Cal.2d 547, 551-553 [43 Cal.Rptr. 3, 399 P.2d 571].)" (*In re Walker* (1974) 10 Cal.3d 764, 773 [112 Cal.Rptr. 177, 518 P.2d 1129].) "Without this usual limitation of the use of

[4]Challenges to the validity of the statute under which the petitioner was convicted do not present this problem and may be raised at any time. We recognized in *In re Bell, supra*, 19 Cal.2d 488, 493, that in some cases habeas corpus is the only remedy available by which this claim may be raised, and that "the importance of securing a correct determination on the question of constitutionality" of a statute warrants departure from the usual procedural limits on habeas corpus. For that reason these claims have not been subject to either the rules requiring justification for delay or exhaustion of appellate remedies. (See *In re Berry* (1968) 68 Cal.2d 137, 145 [65 Cal.Rptr. 273, 436 P.2d 273]; *In re Zerbe* (1964) 60 Cal.2d 666, 667-668 [36 Cal.Rptr. 286, 388 P.2d 182, 10 A.L.R.3d 840]; *In re Dixon, supra*, 41 Cal.2d 756, 762.)

[5]Delay in seeking habeas corpus or other collateral relief has been measured from the time a petitioner becomes aware of the grounds on which he seeks relief. That time may be as early as the date of conviction. (See *In re Saunders* (1970) 2 Cal.3d 1033, 1040 [88 Cal.Rptr. 633, 472 P.2d 921]; *In re Wells* (1967) 67 Cal.2d 873, 875 [64 Cal.Rptr. 317, 434 P.2d 613].) Although delayed presentation to enable the petitioner to file a habeas corpus petition with the opening brief on appeal has been permitted, a petition should be filed as promptly as the circumstances allow, and the petitioner "must point to particular circumstances sufficient to justify substantial delay . . . ." (*In re Stankewitz* (1985) 40 Cal.3d 391, 397, fn. 1 [220 Cal.Rptr. 382, 708 P.2d 1260].)

[6]Were the rule otherwise, the potential for abuse of the writ would be magnified as counsel withdraw or are substituted and each successor attorney claims that a petition was filed as soon as the successor attorney became aware of the new basis for seeking relief.

the writ, judgments of conviction of crime would have only a semblance of finality." (*In re McInturff, supra,* 37 Cal.2d 876, 880.)

■ For the same reasons, whether raised in a petition for writ of habeas corpus or by *coram nobis,* newly discovered evidence is a basis for relief only if it undermines the prosecution's entire case. It is not sufficient that the evidence might have weakened the prosecution case or presented a more difficult question for the judge or jury. (*In re Hall* (1981) 30 Cal.3d 408, 417 [179 Cal.Rptr. 223, 637 P.2d 690]; *In re Weber* (1974) 11 Cal.3d 703, 724 [114 Cal.Rptr. 429, 523 P.2d 229]; *In re Branch* (1969) 70 Cal.2d 200, 215 [74 Cal.Rptr. 238, 449 P.2d 174].) "[A] criminal judgment may be collaterally attacked on the basis of 'newly discovered' evidence only if the 'new' evidence casts fundamental doubt on the accuracy and reliability of the proceedings. At the guilt phase, such evidence, if credited, must undermine the entire prosecution case and point unerringly to innocence or reduced culpability." (*People* v. *Gonzalez* (1990) 51 Cal.3d 1179, 1246 [275 Cal.Rptr. 729, 800 P.2d 1159].)

■ The rule is similar when a petitioner attributes the failure to discover and present the evidence at trial to trial counsel's alleged incompetence. The presumption that the essential elements of an accurate and fair proceeding were present is not applicable in that case, as it is when the basis on which relief is sought is newly discovered evidence. (*Strickland* v. *Washington* (1984) 466 U.S. 668, 694 [80 L.Ed.2d 674, 697-698, 104 S.Ct. 2052]; *People* v. *Gonzalez, supra,* 51 Cal.3d 1179, 1246.) Nonetheless, the petitioner must establish "prejudice as a 'demonstrable reality,' not simply speculation as to the effect of the errors or omissions of counsel. [Citation.] . . . The petitioner must demonstrate that counsel knew or should have known that further investigation was necessary, and must establish the nature and relevance of the evidence that counsel failed to present or discover." (*People* v. *Williams* (1988) 44 Cal.3d 883, 937 [245 Cal.Rptr. 336, 751 P.2d 395].) Prejudice is established if there is a reasonable probability that a more favorable outcome would have resulted had the evidence been presented, i.e., a probability sufficient to undermine confidence in the outcome. (*Strickland* v. *Washington, supra,* 466 U.S. 668, 693-694 [80 L.Ed.2d at pp. 697-698]; *People* v. *Williams, supra,* 44 Cal.3d 883, 944-945.) The incompetence must have resulted in a fundamentally unfair proceeding or an unreliable verdict. (*Lockhart* v. *Fretwell* (1993) 506 U.S. __, __ [122 L.Ed.2d 180, 113 S.Ct. 838].)

■ Postconviction habeas corpus attack on the validity of a judgment of conviction is limited to challenges based on newly discovered evidence, claims going to the jurisdiction of the court, and claims of constitutional

dimension. (See *In re Hall* (1981) 30 Cal.3d 408, 420 [179 Cal.Rptr. 223, 637 P.2d 690]; *In re Bell, supra,* 19 Cal.2d 488, 493-496.) However, some trial errors, even though of constitutional dimension, are not cognizable on habeas corpus because the error " 'carries with it no risk of convicting an innocent person.' " (*In re Sterling* (1965) 63 Cal.2d 486, 487 [47 Cal.Rptr. 205, 407 P.2d 5].) In *Sterling,* as it had in *In re Lessard* (1965) 62 Cal.2d 497, 503 [42 Cal.Rptr. 583, 399 P.2d 39], the court adopted the view expressed by then-Justice Traynor in *In re Harris* (1961) 56 Cal.2d 879, 880 [16 Cal.Rptr. 889, 366 P.2d 305] (conc. opn. of Traynor, J.). Justice Traynor had reasoned that the erroneous admission of unlawfully seized evidence presented no risk that an innocent defendant might be convicted, and "[t]he risk that the deterrent effect of the [exclusionary] rule will be compromised by an occasional erroneous decision refusing to apply it is far outweighed by the disruption of the orderly administration of justice that would ensue if the issue could be relitigated over and over again on collateral attack." (*Id.,* at p. 884, conc. opn. of Traynor, J.) That reasoning persuaded the court that Fourth Amendment violations need not be considered on habeas corpus even when the issue had not been raised on appeal. "Failure to exercise these readily available remedies will ordinarily constitute such a deliberate by-passing of orderly state procedures as to justify denial of federal as well as state collateral relief." (*In re Sterling, supra,* 63 Cal.2d at p. 489.)

## B. Repeated Applications,[7] Piecemeal Presentation of Claims, and Delay.

 ██ █ As we have noted, this is the second petition for writ of habeas corpus by this petitioner. Several years after his conviction and the affirmance of his appeal, he repeats claims rejected when his initial petition was denied and seeks to raise claims that were not asserted in that petition.

### 1. *Repetitious and piecemeal claims.*

██ It has long been the rule that absent a change in the applicable law or the facts, the court will not consider repeated applications for habeas corpus presenting claims previously rejected. (See *In re Terry* (1971) 4 Cal.3d 911, 921, fn. 1 [95 Cal.Rptr. 31, 484 P.2d 1375]; *In re Horowitz* (1949) 33 Cal.2d 534, 546 [203 P.2d 513]; *In re De La Roi* (1946) 28 Cal.2d 264, 275 [169 P.2d 363]; *In re Miller* (1941) 17 Cal.2d 734, 735 [112 P2d 10].) The court

---

[7]Because no appeal lies from the denial of a petition for writ of habeas corpus, a prisoner whose petition has been denied by the superior court can obtain review of his claims only by the filing of a new petition in the Court of Appeal. Our reference to and discussion of successive petitions has no application to that practice, or to the filing of an original petition in this court after denial of a petition by the Court of Appeal. (*In re Trombley* (1948) 31 Cal.2d 801, 804, fn. 1 [193 P.2d 734].)

has also refused to consider newly presented grounds for relief which were known to the petitioner at the time of a prior collateral attack on the judgment. (See *In re Horowitz, supra,* 33 Cal.2d 534, 546-547; *In re Drew* (1922) 188 Cal. 717, 722 [207 P. 249].) The rule was stated clearly in *In re Connor, supra,* 16 Cal.2d 701, 705: "In this state a defendant is not permitted to try out his contentions piecemeal by successive proceedings attacking the validity of the judgment against him."

These procedural bars to habeas corpus relief have been termed "discretionary," however (see *In re Terry, supra,* 4 Cal.3d 911, 921. fn. 1; *In re Bevill* (1968) 68 Cal.2d 854, 863, fn. 9 [69 Cal.Rptr. 599, 442 P.2d 679]), and have been described as a "policy" of the court. (See *In re Horowitz, supra,* 33 Cal.2d 534, 546.) And, while *In re Horowitz, supra,* 33 Cal.2d 534, *In re Connor, supra,* 16 Cal.2d 701, 705, and *In re Drew, supra,* 188 Cal. 717, condemned piecemeal presentation of claims, none expressly noted the problem of belated presentation of claims that may not have been identified, but with due diligence should have been known to the petitioner and presented in an earlier petition. On occasion, the merits of successive petitions have been considered regardless of whether the claim was raised on appeal or in a prior petition, and without consideration of whether the claim could and should have been presented in a prior petition. (See *In re Walker, supra,* 10 Cal.3d 764; *In re Crumpton* (1973) 9 Cal.3d 463, 467 [106 Cal.Rptr. 770, 507 P.2d 74], *In re Terry, supra,* 4 Cal.3d 911; *In re Bevill, supra,* 68 Cal.2d 854.)

Our past decisions have thereby suggested that the rules against piecemeal presentation of claims and repetitious petitions are subject to undefined exceptions and that the court may be willing to entertain multiple collateral attacks on a judgment notwithstanding the potential for abusive writ practice. As a result, many prisoners present petitions raising claims that are or should be barred. They do so either in the hope that this court will find their claims sufficiently compelling to justify an exception to the rules, or because the possibility that this court will excuse a procedural default makes the petition a necessity in order to exhaust the petitioners' state remedies for purposes of review in federal court.

Respondent Director of the Department of Corrections, noting the uncertainty created by our past practice, asks us to identify with greater precision the circumstances which will justify departure from the usual limitations on availability of the writ identified above.[8] He argues that the court already has or should adopt a "cause and prejudice" rule like that applicable in the

---

[8] Respondent also asks us to clarify and limit the exceptions to the rules of *In re Waltreus* (1965) 62 Cal.2d 218, 224 [42 Cal.Rptr. 9, 397 P.2d 1001], and *In re Dixon, supra,* 41 Cal.2d

federal court to successive petitions. Under that rule a petitioner "must show cause for the procedural default and prejudice attributable thereto" (*Murray v. Carrier* (1986) 477 U.S. 478, 485 [91 L.Ed.2d 397, 406-407, 106 S.Ct. 2639]) to obtain review of a defaulted claim. (See also *McCleskey v. Zant, supra,* 499 U.S. 467 [113 L.Ed.2d 517, 111 S.Ct. 1454].) Under that approach, no claims which the petitioner failed to include in the initial habeas corpus petition would be considered unless the petitioner demonstrates (1) diligence in pursuing investigation of potential claims, (2) some external cause for the failure to raise them in the prior petition, and (3) prejudice resulting from the error of which he or she complains.

Petitioner argues that this court does not have an "abuse of the writ" doctrine and should not follow the lead of the federal court in restricting successive habeas corpus petitions. ██ He contends that section 1475 (discussed *post*) and sound policy mandate that the court consider successive petitions on their merits not only when the petition alleges a change in the applicable law or facts, but in *any* case in which no order to show cause issued on a prior petition or petitions.[9]

We are not persuaded that either section 1475 or sound policy mandates or warrants consideration of unjustified successive collateral attacks on a judgment of conviction.

a. *Abuse of the writ.*

 This court has never condoned abusive writ practice or repetitious collateral attacks on a final judgment. Entertaining the merits of successive petitions is inconsistent with our recognition that delayed and repetitious presentation of claims is an abuse of the writ.

"It is the policy of this court to deny an application for habeas corpus which is based upon grounds urged in a prior petition which has been denied, where there is shown no change in the facts or the law substantially affecting the rights of the petitioner. [Citations.] And as to the presentation of new grounds based on matters known to the petitioner at the time of

---

756, 759, that claims that were or could have been raised on appeal are not cognizable on habeas corpus. That question is before the court in *In re Harris, post,* page 813 [21 Cal.Rptr.2d 373, 855 P.2d 391] and will not be considered here.

[9]The denial of a habeas corpus petition without issuance of an order to show cause, often referred to as a "summary denial," does not mean that the court has not considered the merits of the claims. Unless a procedural bar is apparent, the court will determine whether the petition states a prima facie case for relief, i.e., whether it states facts which, if true, entitle the petitioner to relief. (*In re Lawler* (1979) 23 Cal.3d 190, 194 [151 Cal.Rptr. 833 [588 P.2d 1257].)

previous attacks upon the judgment, in *In re Drew* (1922) 188 Cal. 717, 722 [207 P. 249], it was pointed out that the applicant for habeas corpus 'not only had his day in court to attack the validity of this judgment, but . . . had several such days, on each of which he could have urged this objection, but did not do so'; it was held that 'The petitioner cannot be allowed to present his reasons against the validity of the judgment against him piecemeal by successive proceedings for the same general purpose.' " (*In re Horowitz, supra*, 33 Cal.2d 534, 546-547.)

When a habeas corpus petition is denied on the merits, the court has determined that the claims made in that petition do not state a prima facie case entitling the petitioner to relief. A successive petition presenting additional claims that could have been presented in an earlier attack on the judgment is, of necessity, a delayed petition. Petitioner offers no persuasive reason for routinely permitting consideration of the merits of such claims. Were we to do so we would sanction a practice which unreasonably delays execution of judgment and imposes undue burdens on the state both in responding to claims made in delayed petitions and in marshalling stale evidence when retrial is necessary. Successive petitions also waste scarce judicial resources as the court must repeatedly review the record of the trial in order to assess the merits of the petitioner's claims and assess the prejudicial impact of the constitutional deprivation of which he complains.

Willingness by the court to entertain the merits of successive petitions seeking relief on the basis of the same set of facts undermines the finality of the judgment. Moreover, such piecemeal litigation prevents the positive values of deterrence, certainty, and public confidence from attaching to the judgment. The values that inhere in a final judgment are equally threatened by petitions for collateral relief raising claims that could have been raised in a prior petition.

b. *Section 1475.*

Section 1475 does not alter our conclusion that such petitions may and should be denied.

Section 1475 does not limit the court's power to decline to consider successive petitions on their merits. The court may require an explanation for the failure to include the claim or claims on which such petitions are based in the prior petition—a justification sufficient to outweigh the importance of finality of judgments and to justify the imposition on the court of the burden of reviewing multiple petitions, each of which presents claims of prejudicial error or conduct and demands repeated reviews of the record of the trial proceedings.

The legislative purpose underlying section 1475 is to control abuses of the writ and thereby spare courts with jurisdiction over habeas corpus petitions the burden of repetitious petitions. It now provides in pertinent part: "If the writ has been granted by any court or a judge thereof and after the hearing thereof the prisoner has been remanded, he shall not be discharged from custody by the same or any other court of like general jurisdiction, unless upon some ground not existing in fact at the issuing of the prior writ. Should the prisoner desire to urge some point of law not raised in the petition for or at the hearing upon the return of the prior writ, then, in case such prior writ had been returned or returnable before a superior court or a judge thereof, no writ can be issued upon a second or other application except by the appropriate court of appeal or some judge thereof, or by the Supreme Court or some judge thereof, and in such an event such writ must not be made returnable before any superior court or any judge thereof. In the event, however, that the prior writ was returned or made returnable before a court of appeal or any judge thereof, no writ can be issued upon a second or other application except by the Supreme Court or some judge thereof, and such writ must be made returnable before said Supreme Court or some judge thereof." (§ 1475.)

 Petitioner notes that this provision bars repeated applications to the same level of court only when a petition raises the same issue as a prior petition and only if a writ issued[10] in response to the prior petition. He assumes on that basis that the Legislature has implicitly permitted successive petitions raising new claims or repeated applications for relief on the same ground if no writ or order to show cause has issued and there has been no hearing on the claim or claims. The history of section 1475 suggests otherwise. The statute does not compel courts to consider successive petitions on their merits, nor does it purport to restrict the court's inherent power to control its calendar and prevent abuse of the writ.

Section 1475 was initially codified in 1872 as part of the Penal Code of 1872. The Penal Code reenacted the preexisting statutes implementing the inherent and constitutional authority of a court of record to grant the writ (Stats. 1863, ch. 260, p. 334; Stats. 1859, ch. 19, p. 15), and restricted the authority of the county courts to issuance of the writ on petitions by persons

---

[10]Because the writ itself commands the custodian of the petitioner to bring the petitioner before the court to resolve the claims made in the petition, a procedure ill-suited to appellate court procedure, the practice of issuing an order to show cause to the respondent has been substituted for issuance of the writ. (See *In re Hochberg* (1970) 2 Cal.3d 870, 873-874, fn. 2 [87 Cal.Rptr. 681, 471 P.2d 1].) Section 1475 therefore applies if the court issues either a writ or an order to show cause.

located within the county.[11] That restriction, however, reflected the initial legislative attempt to control abuse of the writ, and the recognition that this court had already been forced to impose judicial restrictions to curb judge-shopping and repetitious petitions.

This court first attempted to do so in *Ex parte Ellis* (1858) 11 Cal. 222. Ellis, who had been convicted of a misdemeanor in El Dorado County, sought a writ returnable before the Supreme Court. The act concerning the writ of habeas corpus (Stats. 1850, ch. 122, p. 334) then provided that the writ might be granted by the Supreme Court, any judge of the court, or any district or county court or any judge of those courts, and required that it issue without delay and be heard immediately after the return. The court noted the "frequency with which applications for the writ are made to this tribunal on the part of persons in custody in other counties" (*Ex parte Ellis, supra,* 11 Cal. at p. 223), and undertook a construction of the statute which restricted issuance of the writ to the county in which the petitioner was held. We reasoned that the Legislature could not have contemplated giving a misdemeanant "the privilege of selecting from the judiciary of the whole State the individual to whom he prefers to make his application" or allowing a petitioner to make applications to judges of other counties. Construing the statute in that manner "would lead to possible injustice, contradiction and absurdity." (*Id.,* at p. 224.) Therefore, we held, the writ should not be issued to run out of the county unless the local judge refused or was unable to act. "This secures the right of a citizen and of the people, and deprives a process intended to be used for beneficial purposes of the power to injure the public interests by possible escapes, and delays, and onerous costs. The mere caprice of the prisoner ought not to prevail against the interests of the people and the public convenience." (*Id.,* at p. 225.)

An 1862 amendment of the Constitution of 1849 and inclusion of this restriction in section 1475 when the Penal Code was adopted in 1872 were not sufficient to control abuse, however. The Legislature deemed it necessary to amend section 1475 in 1905 and again in 1907 (see Stats. 1905, ch. 544, § 1, p. 706; Stats. 1907, ch. 286, § 1, p. 560) to curb continuing abuse

---

[11]As originally codified section 1475 provided:

The writ of habeas corpus may be granted:

"1. By the Supreme Court, or any Justice thereof, upon petition on behalf of any persons restrained of his liberty in this State. When so issued, it may be made returnable before the Court or any Justice thereof, or before any District or County Court, or any Judge thereof;

"2. By the District Courts, or a Judge thereof, upon petition on behalf of any person restrained of his liberty in their respective districts;

"3. By the County Courts, or a Judge thereof, upon petition on behalf of any person restrained of his liberty in their respective counties."

of the writ.[12] Because the denial of a petition for writ of habeas corpus was not appealable and a ruling denying a petition is not res judicata as to the issues raised (*Matter of Ring* (1865) 28 Cal. 247, 251; *Matter of Perkins* (1852) 2 Cal. 424, 430), the courts continued to be burdened with successive petitions. The Legislature therefore acted to restrict petitions presented to the same level of court that had heard and rejected a prior petition, unless the petition stated a basis for relief that had not existed when the prior petition was denied.[13]

We have never construed section 1475 as a grant of authority for the filing of any successive petition not expressly barred by the statute, however, and have continuously exercised our authority to protect the courts from imposition on their duties by repetitious writ petitions. Chief Justice Beatty did so in *Ex parte Mogenson* (1907) 151 Cal. 517 [91 P. 334], shortly after the 1907 amendment of section 1475, explaining that he deemed it necessary to curb attempts to have a single justice of this court exercise habeas corpus jurisdiction to overrule a ruling of the Court of Appeal on a prior petition: "The authority of one justice of this court to make a writ of *habeas corpus* issued by himself returnable before the whole court was formerly exercised with great freedom—so much freedom, indeed, as to result in a serious detriment to the more important business of the court. It was a favorite method with certain practitioners to present their petitions to some one justice, and often to several different justices in succession, asking for a writ returnable before the court, and if they could get the writ allowed in that way the whole court would be compelled on the day named in the writ to drop all other business for the purpose of hearing the return to a petition which would never have been granted if the court or a quorum of the justices had been consulted beforehand. . . . [¶] . . . The effect of [the 1907 amendment of section 1475], as I understand it, is to put an end to the practice heretofore prevailing of going from one judge to another of no greater authority with the same petition for a writ of *habeas corpus,* in order to secure from one relief that has been denied by another. . . . [¶] As I construe . . . the section, it does not mean that after the district court of

---

[12]A prior revision of the act (Stats. 1901, ch. 158, § 300, p. 499) had been invalidated by this court in *Lewis* v. *Dunne* (1901) 134 Cal. 291 [66 P. 478], because the statute failed to readopt the amended or revised sections and violated the single subject rule.

[13]Shortly after the 1907 amendment, the Court of Appeal suggested an additional restriction on successive petitions based on new grounds in *Ex parte Upson* (1908) 7 Cal.App. 531, 533-534: "After a petition for a writ of habeas corpus has been granted, the matter argued, and the prisoner remanded, to allow here a new petition for another writ by the same defendant for the same offense, but by different counsel, and upon a different ground from that stated in the original petition, is a practice that certainly should not be encouraged. If a case could arise in which it might be deemed advisable to apply for a second writ after a similar application had been denied, the orderly and proper way would be to apply to the court for leave to file a new petition."

appeal has by the unanimous decision of the three judges remanded a prisoner on *habeas corpus* a single justice of this court may issue a new writ upon a similar petition, returnable before himself, and upon the hearing overrule the decision of the district court of appeal and discharge the prisoner." (151 Cal. at pp. 518-519.)

When similar abuses continued in the form of petitions to a single justice of this court after denial of an earlier petition by the entire court, Chief Justice Angellotti extended the restriction to those petitions as well, even in cases in which no writ had issued, and intimated that successive petitions would not be entertained routinely by the court itself: "Not only was such [prior] application in regard to the same detention or restraint, but the grounds of the former application were the same as those now urged, with a greater degree of elaboration. While it may be that under certain circumstances the court itself might feel warranted in entertaining a second application from a party regarding the same detention or restraint, it is manifest that no single member of the court, be he chief justice or associate justice, is warranted in granting a writ where the same has been denied as to the same detention or restraint by the whole court in Bank." (*Matter of Udell* (1915) 171 Cal. 599, 600 [154 P. 23].)

It is clear from these and the subsequent decisions of this court noted above, which have created additional limitations on petitions for writs of habeas corpus, that section 1475 has never been construed as the sole limitation on successive petitions and that the Legislature has not by the enactment of that section attempted to compel this court to entertain such petitions on their merits. As noted above, the court has emphasized that repetitious successive petitions are not permitted and, in *In re Horowitz, supra*, 33 Cal.2d 534, 546-547, *In re Connor, supra*, 16 Cal.2d 701, 705, and *In re Drew, supra*, 188 Cal. 717, 722, has condemned piecemeal presentation of known claims. Those decisions reflect policies that supplement legislative restrictions on habeas corpus; they also have as their purpose a curb on abuse of the writ of habeas corpus. Before a successive petition will be entertained on its merits the petitioner must explain and justify the failure to present claims in a timely manner in his prior petition or petitions.

2. *Justification for Delayed and/or Successive Petitions.*

Before considering the merits of a second or successive petition, a California court will first ask whether the failure to present the claims underlying the new petition in a prior petition has been adequately explained, and whether that explanation justifies the piecemeal presentation of the petitioner's claims. This requirement is reasonable in view of the interest

of the state in carrying out its judgments, the interest of the respondent in having the ability to respond to the petition and to retry the case should the judgment be invalidated, and the burden on the judicial system.

In assessing a petitioner's explanation and justification for delayed presentations of claims in the future, the court will also consider whether the facts on which the claim is based, although only recently discovered, could and should have been discovered earlier. A petitioner will be expected to demonstrate due diligence in pursuing potential claims. If a petitioner had reason to suspect that a basis for habeas corpus relief was available, but did nothing to promptly confirm those suspicions, that failure must be justified.

However, where the factual basis for a claim was unknown to the petitioner and he had no reason to believe that the claim might be made, or where the petitioner was unable to present his claim, the court will continue to consider the merits of the claim if asserted as promptly as reasonably possible. And, as in the past, claims which are based on a change in the law which is retroactively applicable to final judgments will be considered if promptly asserted and if application of the former rule is shown to have been prejudicial.

With the exception of petitions which allege facts demonstrating that a fundamental miscarriage of justice has occurred, an exception to be addressed below, unjustified successive petitions will not be entertained on their merits.

This petitioner, in common with others who have filed multiple petitions attacking the same judgment of conviction since *McCleskey* v. *Zant, supra,* 499 U.S. 467 (hereafter *McCleskey*), was decided, states that his new claims were "developed" in response to *McCleskey*, which was decided after his earlier petition was filed. This petitioner does not allege that the factual and/or legal bases for these claims were unknown at the time the earlier petition was filed.

Attempts to justify a failure to make all of a petitioner's claims in the first petition by relying on the Supreme Court's *McCleskey* decision are unpersuasive. *McCleskey* construes and implements a federal statute governing successive petitions to federal courts by state prisoners. (Rules Governing [28 U.S.C.] § 2254 Cases in the U.S. Dist. Cts., rule 9(b) [Rule 9(b)].) The decision does not control the availability of relief in the courts of this state. (*In re Shipp, supra,* 62 Cal.2d 547, 553-554.) *McCleskey* is instructive, however, since the high court recognized there that abusive writ practice has a serious impact on the states' administration of criminal justice.

In *McCleskey*, the Supreme Court reviewed the statutory and common law efforts to control abuse of the writ of habeas corpus in the federal courts. The high court concluded that abuse in the form of successive petitions exists when a claim has been deliberately abandoned earlier and is also found when a claim presented in a subsequent petition could have been presented in an earlier petition. (499 U.S. at p. 488 [113 L.Ed.2d at pp. 541-542.].)

Recognizing that the federal courts have equitable discretion to excuse the failure to include all claims in the first habeas corpus petition, the Supreme Court attempted to resolve the question which often faces this court—how to determine whether a petitioner has a legitimate excuse for failure to raise claims at the appropriate time, i.e., in a prior petition. The high court clearly recognized the interests which California decisions governing successive and delayed petitions have long reflected:

"[T]he writ strikes at finality. One of the law's very objects is the finality of its judgments. Neither innocence nor just punishment can be vindicated until the final judgment is known. 'Without finality, the criminal law is deprived of much of its deterrent effect.' *Teague* v. *Lane*, 489 U.S. 288, 309 [103 L.Ed.2d 334, 354-355, 109 S.Ct. 1060] (1989). And when a habeas petitioner succeeds in obtaining a new trial, the '"erosion of memory" and "dispersion of witnesses" that occur with the passage of time,' *Kuhlmann* v. *Wilson* [(1986) 477 U.S. 436] at 453 [91 L.Ed.2d 364, 106 S.Ct. 2616], prejudice the government and diminish the chances of a reliable criminal adjudication. . . .

". . . . . . . . . . . . . . . . . . . . . . . .

"Far more severe are the disruptions when a claim is presented for the first time in a second or subsequent . . . habeas petition. If '[c]ollateral review of a conviction extends the ordeal of trial for both society and the accused,' *Engle* v. *Isaac* [(1982) 456 U.S. 107] at 126-127 [71 L.Ed.2d at pp. 799-800], the ordeal worsens during subsequent collateral proceedings. Perpetual disrespect for the finality of convictions disparages the entire criminal justice system." (499 U.S. at pp. 491-492 [113 L.Ed.2d at pp. 542-543].)

The court then adopted for purposes of federal habeas corpus review of state criminal convictions the "cause and prejudice" standard analogous to that used in determining if a state procedural default bars federal review (see *Wainwright* v. *Sykes* (1977) 433 U.S. 72, 88 [53 L.Ed.2d 594, 608-609, 97 S.Ct. 2497]: "In procedural default cases, the cause standard requires the petitioner to show that 'some objective factor external to the defense impeded counsel's efforts' to raise the claim in state court. *Murray* v. *Carrier*,

[*supra*,] 477 U.S. [478] at 488 [91 L.Ed.2d at pp. 408-409]. Objective factors that constitute cause include '"interference by officials"' that makes compliance with the state's procedural rules impracticable, and 'a showing that the factual or legal basis for a claim was not reasonably available to counsel.' *Ibid*. In addition, constitutionally 'ineffective assistance of counsel . . . is cause.' *Ibid*. Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a procedural default. *Id.*, at 486-488 [91 L.Ed.2d at pp. 407-409]. Once the petitioner has established cause, he must show '"actual prejudice" resulting from the errors of which he complains.' *United States* v. *Frady*, 456 U.S. 152, 168 [71 L.Ed.2d 816, 102 S.Ct. 1584] (1982).

"Federal courts retain the authority to issue the writ of habeas corpus in a further, narrow class of cases despite a petitioner's failure to show cause for a procedural default. These are extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime. We have described this class of cases as implicating a fundamental miscarriage of justice." (499 U.S. at p. 494 [113 L.Ed.2d at pp. 544-545].)

Under the rule for federal practice announced in *McCleskey*, the petitioner will bear the burden, once the government pleads abuse of the writ, to disprove abuse by showing cause for the failure to raise his claims in an earlier petition and prejudice therefrom.

That decision is irrelevant to petitioner's burden in this court, however. The suggestion that the decision of *McCleskey* justifies piecemeal presentation of claims to this court implies both that there was no prior federal authority identifying piecemeal presentation of claims as an abuse of the writ, and that there has been no comparable state requirement governing habeas corpus claims. Neither proposition is supportable.

As we have shown, piecemeal presentation of known claims and repetitious presentation of previously denied claims have not been condoned in this state. The federal courts have also disapproved piecemeal presentation of claims. Considering a series of repetitious federal habeas corpus petitions, stays of execution of judgment, and appeals by a state prisoner in *Barefoot* v. *Estelle* (1983) 463 U.S. 880 [77 L.Ed.2d 1090, 103 S.Ct. 3383], the Supreme Court recognized the interest of the state and the potential for abuse of the writ. " 'To the extent that [second and successive habeas corpus petitions] involve the danger that a condemned inmate might attempt to use repeated petitions and appeals as a mere delaying tactic, the State has a quite legitimate interest in preventing such abuses of the writ.' . . . Rule 9(b) states that 'a second or successive petition may be dismissed if the judge

finds that it fails to allege new or different grounds for relief . . . [or if] the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.' See *Sanders* v. *United States*, 373 U.S. 1, 18 [10 L.Ed.2d 148, 162-163, 83 S.Ct. 1068] (1963); Advisory Committee Note to Rule 9(b), 28 U.S.C., p. 273." (463 U.S. at p. 895 [77 L.Ed.2d at pp. 1105-1106].)

Thereafter, in *Woodard* v. *Hutchins* (1984) 464 U.S. 377 [78 L.Ed.2d 541, 104 S.Ct. 752], the Supreme Court, in a per curiam order, vacated a stay of execution granted by a judge of the United States Court of Appeals for the Fourth Circuit. Justice Powell, joined by four other justices, concurred, observing that the underlying petition for writ of habeas corpus was a successive petition filed without explanation for failure to raise the claims earlier or to include them in an earlier petition (464 U.S. at pp. 377-378 [78 L.Ed.2d at p. 543] (conc. opn. of Powell, J.)), and characterizing the filing as an abuse of the writ. "This case is a clear example of the abuse of the writ that § 2244(b) was intended to eliminate. All three . . . claims could and should have been raised in his first petition for federal habeas corpus." (*Id.,* at p. 379 [78 L.Ed.2d at p. 544].) The opinion notes that there was no evidence that the claims had been deliberately withheld, but no explanation was offered for the failure to raise the claims earlier. (*Id.,* at p. 379, fn. 3 [78 L.Ed.2d at p. 544].)[14]

While a major concern of the court was that the second habeas corpus petition in *Woodward* v. *Hutchins, supra,* had been filed on the eve of execution, the court's statement that failure to include all claims in the original petition was an abuse of the writ was not so limited. A petitioner cannot reasonably claim that *McCleskey* constituted a change in federal habeas corpus procedure that somehow justified a failure to include all known claims in the initial *state* petition.[15]

 Petitioner argues that a prisoner's own knowledge of the basis for a claim should be irrelevant if there has been no "previous development of the

---

[14]In *Sanders* v. *United States* (1963) 373 U.S. 1, 18 [10 L.Ed.2d 148, 162-163, 83 S.Ct. 1068], the court had stated that deliberately withholding a claim in an initial habeas corpus petition could be deemed a waiver of the right to a hearing on the second petition, as could abandonment of a ground during a hearing on the first petition. "Nothing in the traditions of habeas corpus requires the federal courts to tolerate needless piecemeal litigation, or to entertain collateral proceedings whose only purpose is to vex, harass, or delay." The court left to the "sound discretion" of federal trial judges any ruling on whether a successive petition was justified or should be denied without consideration of the merits, however. (*Ibid.*)

[15]Petitioner's counsel suggested during oral argument that *McCleskey* is relevant because, in order to comply with that decision, and in accord with federal habeas corpus practice, factual allegations in federal habeas corpus petitions are made on "information and belief." When the federal court then provides funds to assist in gathering evidence to support the claim, facts are discovered that were not known when a prior petition was denied in the state

claim combining all the relevant historical facts and a legal theory." This is not the rule. A prisoner who has knowledge of the facts upon which he believes that he is entitled to relief must explain any delay in seeking relief. (*In re Shipp, supra,* 62 Cal.2d 547, 553.) He may rely on counsel who then represents him to include the claim in a petition to be filed by counsel if he has alerted counsel to the issue. If he is not represented by counsel, he need not "develop" the legal theory on which the claim is based, but must fully and fairly state the facts which underlie the claim for relief. (*In re Swain, supra,* 34 Cal.2d 300, 304.)

Petitioner concedes that whether there has been a change of counsel is irrelevant to whether the merits of claims raised for the first time in a successive petition should be entertained. The rule has been that the court will look to what petitioner and/or his counsel knew at the time of the appeal or the filing of the first habeas corpus petition, and demand that the failure to raise all issues in a single, timely petition be justified. Any other rule would put a premium on repeated changes of counsel, and would wholly undermine the policy underlying the court's refusal to consider the merits of successive petitions offering piecemeal presentation of claims. And, as we have indicated above, in the future a habeas corpus petitioner, like a petitioner who mounts a collateral attack by petition for writ of *coram nobis,* " 'must show that the facts upon which he relies were not known to him and could not in the exercise of due diligence have been discovered by him at any time substantially earlier than the time of his motion for the writ.' " (*People* v. *Shipman, supra,* 62 Cal.2d 226, 230.)

In limited circumstances, consideration may be given to a claim that prior habeas corpus counsel did not competently represent a petitioner. An imprisoned defendant is entitled by due process to reasonable access to the courts, and to the assistance of counsel if counsel is necessary to ensure that access, but neither the Eighth Amendment nor the due process clause of the United States Constitution gives the prisoner, even in a capital case, the right to counsel to mount a collateral attack on the judgment. (*Murray* v. *Giarratano* (1989) 492 U.S. 1 [106 L.Ed.2d 1, 109 S.Ct. 2765].)

court. Therefore, she argues, the state court should entertain claims made in successive petitions.

It is already the rule, however, that a petitioner may justify the need to file a second petition on the basis that he did not know of the factual basis for the claim or claims made in that petition when the prior petition was filed. As to potential claims of which a capital defendant or counsel becomes aware in the course of preparing the appeal, funds for investigation are available pursuant to Standard 2 (Compensation Standard) of the Supreme Court Policies Regarding Cases Arising From Judgments of Death.

It is not necessary, therefore, to routinely entertain the merits of successive petitions in capital cases in order to ensure that all potentially meritorious claims are considered.

This court has held, however, that if a petition attacking the validity of a judgment states a prima facie case leading to issuance of an order to show cause, the appointment of counsel is demanded by due process concerns. (*People* v. *Shipman, supra,* 62 Cal.2d 226, 231-232. Cf. *Coleman* v. *Thompson* (1991) 501 U.S. __ [115 L.Ed.2d 640, 111 S.Ct. 2546].)

Regardless of whether a constitutional right to counsel exists, a petitioner who *is* represented by counsel when a petition for writ of habeas corpus is filed has a right to assume that counsel is competent and is presenting all potentially meritorious claims. (But see, *Coleman* v. *Thompson, supra,* 501 U.S. __ [115 L.Ed.2d 640] [where no right to counsel exists there can be no constitutionally ineffective counsel]; *Antone* v. *Dugger* (1984) 465 U.S. 200 [79 L.Ed.2d 147, 104 S.Ct. 962] [failure to raise claims in first petition not excused on ground that counsel was rushed].)

 If, therefore, counsel failed to afford adequate representation in a prior habeas corpus application, that failure may be offered in explanation and justification of the need to file another petition. The petitioner must, however, allege with specificity the facts underlying the claim that the inadequate presentation of an issue or omission of any issue reflects incompetence of counsel, i.e., that the issue is one which would have entitled the petitioner to relief had it been raised and adequately presented in the initial petition, and that counsel's failure to do so reflects a standard of representation falling below that to be expected from an attorney engaged in the representation of criminal defendants. However, if the petitioner is aware of facts that may be a basis for collateral attack, and of their potential significance, he may not fault counsel for failing to pursue that theory of relief if the petitioner failed to advise counsel of those facts. Moreover, mere omission of a claim "developed" by new counsel does not raise a presumption that prior habeas corpus counsel was incompetent, or warrant consideration of the merits of a successive petition. Nor will the court consider on the merits successive petitions attacking the competence of trial or prior habeas corpus counsel which reflect nothing more than the ability of present counsel with the benefit of hindsight, additional time and investigative services, and newly retained experts, to demonstrate that a different or better defense could have been mounted had trial counsel or prior habeas corpus counsel had similar advantages.

Petitioner states that the new claims made here would have been included in the prior petition had this court not "summarily and preemptively denied that petition" and that the additional claims had not been "developed" sufficiently to enable him to include them in that petition at the time it was filed. The court must and will assume, however, that a petition for

writ of habeas corpus includes all claims then known to the petitioner. Summary disposition of a petition which does not state a prima facie case for relief is the rule. (*People* v. *Gonzalez, supra*, 51 Cal.3d 1179, 1258-1259; see also, 6 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Extraordinary Writs, § 3361, p. 4170.) This practice is too well established (see *Ex parte Walpole* (1890) 84 Cal. 584 [24 P. 308]) to warrant any inference that petitioners are justified in believing that the court will routinely delay action on a filed petition to permit amendment and supplementation of the petition.[16] A petitioner who is aware of facts adequate to state a prima facie case for habeas corpus relief should include the claim based on those facts in the petition even if the claim is not fully "developed." If the petition is delayed because the petitioner is not able to state a prima facie case for relief on all of the bases believed to exist, the delay in seeking habeas corpus relief may be justified when the petition is ultimately filed if the petitioner can demonstrate that (1) he had good reason to believe other meritorious claims existed, and (2) the existence of facts supporting those claims could not with due diligence have been confirmed at an earlier time.[17]

Petitioner's assertion that he would have added additional claims to his prior petition had it not been denied neither explains nor justifies the failure to include the claims in the prior petition. (Cf. *In re Haygood* (1975) 14 Cal.3d 802 [122 Cal.Rptr. 760, 537 P.2d 880] [counsel, appointed after issuance of an order to show cause on petition prepared in propria persona by prison inmate, reviewed record and discovered additional ground for·

[16]The inclusion in a habeas corpus petition of a statement purporting to reserve the right to supplement or amend the petition at a later date has no effect. The court will determine the appropriate disposition of a petition for writ of habeas corpus based on the allegations of the petition as originally filed and any amended or supplemental petition for which leave to file has been granted.

The court determines on the basis of the allegations of the original petition and the amended or supplemental petition, if any, as well as the supporting documentary evidence and/or affidavits, which should be attached if available, whether a prima facie case entitling the petitioner to relief if the allegations are proven has been stated. If so, the court issues an order directing the respondent to show cause why the relief sought should not be granted based on those allegations. When an order to show cause does issue, it is limited to the claims raised in the petition and the factual bases for those claims alleged in the petition. It directs the respondent to address only those issues. While the traverse may allege additional facts in support of the claim on which an order to show cause has issued, attempts to introduce additional claims or wholly different factual bases for those claims in a traverse do not expand the scope of the proceeding which is limited to the claims which the court initially determined stated a prima facie case for relief. (*People* v. *Green* (1980) 27 Cal.3d 1, 43, fn. 28 [164 Cal.Rptr. 1, 609 P.2d 468]; *In re Connor, supra*, 16 Cal.2d 701, 711.)

[17]The delay will not be deemed justified, however, unless the petitioner demonstrates that there was good reason to believe that further investigation would lead to facts supportive of a clearly meritorious claim. Nor will the delay be deemed justified if, notwithstanding the existence of substantial, potentially meritorious claims, the petitioner delays filing the petition in order to investigate potential claims of questionable merit.

relief of which the petitioner had been unaware].) The court may grant leave to file a supplemental petition (see, e.g., *In re Haygood, supra,* 14 Cal.3d 802, 805), but has no obligation either to do so or to delay action on a petition in the expectation that a supplement to the petition will be forthcoming. The law mandates prompt disposition of habeas corpus petitions (§ 1476), and the interest of the state in the finality of judgment weighs heavily against delayed disposition of pending petitions. (See *In re Eli* (1969) 71 Cal.2d 214, 218 [77 Cal.Rptr. 665, 454 P.2d 337]; *In re Arguello, supra,* 71 Cal.2d 13, 17; *In re Anderson* (1968) 69 Cal.2d 613, 621 [73 Cal.Rptr. 21, 447 P.2d 117].)

 Although, as we have noted, petitioner has not adequately explained his failure to include all of his present claims in his prior petition, our disposition of the present petition does not rest on that omission. Instead, we turn to his delay in making the new claims and in supplementing the evidentiary basis for claims previously made.

3. *Delay.*

 Petitioner argues that, as to his newly presented claims, his petition is timely under "settled law" and because his appeal was taken prior to this court's publication of express timeliness standards for petitions filed in capital cases. (See Supreme Court Policies Regarding Cases Arising From Judgments of Death, eff. June 6, 1989, mod. eff. December 21, 1992, stds. 1-1.1 to 1-3 [Policies].) Petitioner asserts that counsel began their investigation as soon as this court promulgated those Policies which govern habeas corpus in capital cases. In June 1989 counsel began investigating possible bases for habeas corpus in a case in which judgment had been imposed in February 1985. Almost two years after the Policies were adopted the first petition was filed. This second petition, filed five months after the first, was filed more than two years after publication of the Policies.

Even before June 1989, a habeas corpus petitioner who had knowledge that grounds for a habeas corpus petition existed was on notice that any substantial delay in filing a petition after the grounds became known had to be justified. (*In re Stankewitz, supra,* 40 Cal.3d 391, 396, fn. 1; *People v. Jackson* (1973) 10 Cal.3d 265, 268 [110 Cal.Rptr. 142, 514 P.2d 1222].) *Stankewitz* refutes any suggestion that the petitioner could delay filing the petition until the judgment was affirmed. The citation of *Stankewitz* in the Policies made it clear that the requirement that delay be justified applies to all habeas corpus petitions, including those by defendants in capital cases.

Petitioner's argument that a petition filed promptly after affirmance of a judgment on appeal is timely presupposes a rule holding that the more

prolonged the appellate process, the greater the justification for delay in seeking habeas corpus relief. That is not and has never been the practice in this state. It would be particularly unacceptable in capital cases where the time from judgment to decision of the appeal is often several years during which there is increasing difficulty in determining the facts underlying the petition and, thus, in retrying the case, if necessary.

Our decisions have consistently required that a petitioner explain and justify any substantial delay in presenting a claim. (*In re Swain, supra,* 34 Cal.2d 300, 304.) "It is also the rule that 'a convicted defendant must fully disclose his reasons for delaying in the presentation of' the facts upon which he would have a final judgment overturned. (*In re Wells,* [(1967)] 67 Cal.2d 873, 875 . . . ; *In re Shipp, supra,* 62 Cal.2d 547, 553; *In re Swain,* [*supra,*] 34 Cal.2d 300, 304. . . .)" (*In re Walker, supra,* 10 Cal.3d 764, 774.)

The Policies[18] did not create or modify the timeliness requirements applicable to all habeas corpus petitions except insofar as they (1) establish a presumption of timeliness if a petition by a capital defendant is filed within 90 days of the final due date for the filing of an appellant's reply brief (Policies, std. 1-1.1); and (2) take into account this court's decision in *In re Stankewitz, supra,* 40 Cal.3d 391, when evaluating the timeliness of a habeas corpus petition in a capital case (Policies, std. 1-1.3).

▮▮▮ The Policies did, for the first time, impose an express obligation on counsel representing appellants in capital cases to investigate possible bases for habeas corpus. (Policies, std. 1-1.)[19] ▮▮▮ ▬ ▮▮ This obligation, which counsel in noncapital cases do not share,[20] is limited, however, to an investigation of potentially meritorious grounds for habeas

---

[18]A copy of the current Policies, as revised concurrently with the filing of this opinion to conform to the views expressed herein, is attached as an appendix to the opinion.

[19]To facilitate the investigation and preparation of a habeas corpus petition, when appellate counsel is aware of facts which may constitute a basis for habeas corpus relief, he is authorized by the Policies to expend up to $3,000 for investigation of that potential claim without prior approval of the court. (Policies, std. 2-2.1.) Additional sums for investigation may be authorized by the court on an application which identifies the specific issues to be explored and the specific facts which suggest that a basis for a potentially meritorious habeas corpus claim exists. (Policies, stds. 2-2.2 through 2-4.4.) In either case the expenditure will be considered reasonable only to investigate facts which have come to counsel's attention suggesting that a basis for habeas corpus relief may exist. It is not the intent of the court to authorize or fund "fishing expeditions" whose purpose is solely to discover if any basis for a collateral attack on a presumptively valid judgment can be found.

[20]Appointed counsel in noncapital appeals do not have an obligation to investigate possible bases for collateral attack on the judgment, and retained counsel must do so only if the client retains them for that purpose. Appointed counsel on appeal has a "duty . . . to present defendant's case on direct appeal to the best of his ability. We know of no authority and cannot conceive of any holding that counsel appointed to prosecute a direct appeal has a duty

corpus which have come to counsel's attention in the course of preparing the appeal. The appointment does not impose on counsel an obligation to conduct an unfocused investigation having as its object uncovering any possible factual basis for a collateral attack on the judgment. Only an investigation into specific facts known to counsel which could reasonably lead to a potentially meritorious habeas corpus claim is anticipated and required. When the factual basis for a claim is already known, the claim must be presented promptly unless facts known to counsel suggest the existence of other potentially meritorious claims which cannot be stated without additional investigation.

The complexity of capital cases and the resultant difficulty that appellate counsel appointed long after trial and conviction may have in determining if a basis for habeas corpus may exist is recognized in the Policies. Where the presumption of timeliness is not applicable, Policies, standards 1-1.2 and 1-1.3 govern. Those standards reflect and incorporate into the Policies the preexisting requirement that any substantial delay in the filing of a petition after the factual and legal bases for the claim are known or should have been known must be explained and justified.

▬▬ ▬ ▬ Policies, standard 1-1.2 provides: "A petition filed more than 90 days after the final due date for the filing of appellant's reply brief on the direct appeal may establish absence of substantial delay if it alleges with specificity facts showing the petition was filed within a reasonable time after petitioner or counsel became aware of information indicating a factual

to file or to prosecute an extraordinary writ believed to be desirable or appropriate by the defendant. We hold that there is no such duty." (*In re Golia* (1971) 16 Cal.App.3d 775, 786 [94 Cal.Rptr. 323].)

Neither the provisions of the Business and Professions Code governing attorneys (Bus. & Prof. Code, § 6000 et seq.) nor the Rules of Professional Conduct imposes such an obligation. The same is true of the American Bar Association (ABA) Model Rules of Professional Conduct and the ABA Standards for Criminal Appeals. The ABA Defense Function Standards expressly negate such an obligation: "After a conviction is affirmed on appeal, appellate counsel should determine whether there is any ground for relief under other postconviction remedies. If there is a reasonable prospect of a favorable result he should explain to the defendant the advantages and disadvantages of taking such action. Appellate counsel is not obligated to represent the defendant in a postconviction proceeding unless he has agreed to do so." (ABA Project on Stds. for Criminal Justice (approved Draft 1971) Defense Function Stds., pt. VIII, After Conviction, § 8.5, p. 170.)

As discussed in the body of this opinion, noncapital appellate counsel in this state who are aware of a basis for collateral relief should not await the outcome of the appeal to determine if grounds for collateral relief exist. While they have no obligation to conduct an investigation to discover if facts outside the record on appeal would support a petition for habeas corpus or other challenge to the judgment, if they learn of such facts in the course of their representation they have an ethical obligation to advise their client of the course to follow to obtain relief, or to take other appropriate action.

basis for the claim *and* became aware, or should have become aware, of the legal basis for the claim."[21] (Italics added.)

A petitioner who cannot establish timeliness under Policies, standard 1-1.2, may resort to Policies, standard 1-1.3, which provides: "Alternatively, a petition may establish absence of substantial delay if it alleges with specificity facts showing that although petitioner or counsel was aware of the factual and legal bases for the claim before January 16, 1986 (the date of finality of *In re Stankewitz*[, *supra*,] (1985) 40 Cal.3d 391-397, fn. 1) [220 Cal.Rptr. 382, 384, fn. 1, 708 P.2d 1260, 1262, fn. 1], the petition was filed within a reasonable time after that date."

■ We reject petitioner's claim that he should be excused from compliance with the Policies. Not only do the Policies incorporate preexisting timeliness requirements, but the plain language of the Policies demonstrates that their timeliness standards apply to all capital appeals, including those which arose prior to adoption of the Policies. In particular, the reference in the alternative timeliness standard 1-1.3 to *In re Stankewitz, supra*, 40 Cal.3d at pages 396-397, footnote 1, clearly demonstrates that the Policies anticipate that, insofar as known claims are involved, cases predating the effective date of the Policies will be brought within their reach.[22] Because counsel's obligation to investigate possible claims was created only by the Policies, however, claims that were discovered only as a result of investigation commenced promptly after June 6, 1989, the date on which the Policies became effective, will be deemed timely if presented promptly after counsel became aware of them.

■ This petition is not presumptively timely under Policies, standard 1-1.1 since it was not filed within 90 days after the final due date for the filing of petitioner's reply brief on the direct appeal. We therefore look to Policies, standards 1-1.2 and 1-1.3. Petitioner has not satisfied the requirements of either standard. The petition was not filed within a reasonable time

---

[21]The wording of Policies, standard 1-1.2 implies that the petitioner need not establish diligence in discovering factual claims. If so, it would be inconsistent with our admonition in *In re Streeter* (1967) 66 Cal.2d 47, 52 [56 Cal.Rptr. 824, 423 P.2d 976], and *People* v. *Shipman, supra*, 62 Cal.2d 226, 230, that a person making a collateral attack on a final judgment must demonstrate diligence in investigating possible factual as well as legal bases for relief. It should not be read as excusing diligence in either respect.

In order to avoid confusion, we have modified the wording of Policies, standard 1-1.2, contemporaneously with the filing of this opinion, to reflect the requirement we have adopted here which requires diligence in discovering both the factual and legal bases for habeas corpus claims.

[22]Long before adoption of the Policies, we stated that a habeas corpus petition should be filed with an appeal where matters outside the record must be considered in evaluating a claim of ineffective counsel. (See *People* v. *Pope* (1979) 23 Cal.3d 412, 426, fn. 17 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].)

after *In re Stankewitz, supra*, 40 Cal.3d 391, and petitioner does not allege with specificity when he became aware of the factual and legal bases for the claims he now raises. Thus, it is impossible to determine whether the claims are raised within a reasonable time after petitioner or counsel became aware of the factual and legal bases for his claims. Indeed, review of his claims reveals that many, if not most, are based on facts that were known at the time of trial. We conclude that petitioner has failed to establish an absence of substantial delay in the filing of his petition.

As Policies, standard 1-1.2 indicates, however, delayed presentation alone does not bar consideration of the merits of a habeas corpus petition. The court will consider the reasons proffered for the delay: "[A] habeas corpus petition should be filed as promptly as the circumstances of the case allow. . . . [O]ne who seeks extraordinary relief . . . must point to particular circumstances sufficient to justify substantial delay . . . ." (*In re Stankewitz, supra*, 40 Cal.3d 391, 397, fn. 1.) "The cases clearly hold that petitioner must not only allege with particularity the facts upon which he would attack the final judgment but likewise his reasons for the delayed presentation of such facts." (*In re Shipp, supra*, 62 Cal.2d 547, 553.) "We are entitled to and we do require of a convicted defendant that he allege with particularity the facts upon which he would have a final judgment overturned and that he fully disclose his reasons for delaying in the presentation of those facts." (*In re Swain, supra*, 34 Cal.2d 300, 304.)

In past cases we have accepted as adequate explanation and justification for a five-year delay between conviction and filing of a collateral attack on a judgment, a petitioner's grade school education and inability to make use of information because he was not aware of the law, when, on learning of the law, the prisoner immediately sought the assistance of counsel. (*In re Saunders, supra*, 2 Cal.3d 1033, 1040; see also *In re Perez* (1966) 65 Cal.2d 224, 228 [53 Cal.Rptr. 414, 418 P.2d 6] [three-year delay between sentencing and filing of petition excused where petitioner had not completed seventh grade, was not knowledgeable about legal procedures, and diligently used resources available to prisoners for research and preparation of legal documents].)

By contrast, an 11-year delay in making a claim of ineffective assistance of counsel based on failure to present evidence of diminished capacity known to the defendant at the time of trial and when earlier petitions had been filed was held to be unjustified in *People* v. *Jackson, supra*, 10 Cal.3d 265, 268-269.

Like the rule barring piecemeal presentation of claims, the requirement that a petitioner explain and justify delayed presentation of habeas corpus

claims reflects recognition that a substantial delay will prejudice the respondent's ability to answer the petition, respects the importance of finality of judgments to the state, and recognizes the difficulty of retrial in the event that a judgment is set aside on habeas corpus many years after the conviction. Petitioner has made no effort to meet this requirement, relying instead on his unmeritorious assertion that the petition is timely.

Petitioner has neither stated when he became aware of the legal and factual bases for his claims, nor justified the substantial delay in presenting the claims that it appears were known at or shortly after entry of judgment.

## C. EXCEPTIONS.

The question remains when, if ever, should a California court entertain on the merits claims made in a habeas corpus petition which appears to be barred under decisions of this court imposing procedural limitations on the availability of the writ. Any attempt to articulate a rule must recognize and accommodate the tension between the invocation of a procedural bar to habeas corpus relief and the function of the writ as the means by which a prisoner may obtain relief from an unwarranted conviction and/or sentence.

### 1. *Federal court limitations.*

The Supreme Court considered a similar problem in *Kuhlmann* v. *Wilson* (1986) 477 U.S. 436 [91 L.Ed.2d 364, 106 S.Ct. 2616]. There the court applied the statutory restriction imposed by Congress on successive federal habeas corpus petitions by state prisoners: " '[A] subsequent application for a writ of habeas corpus in behalf of such person need not be entertained by a court of the United States or a justice or judge of the United States unless the application alleges and is predicated on a factual or other ground not adjudicated on the hearing of the earlier application for the writ, and unless the court, justice, or judge is satisfied that the applicant has not on the earlier application deliberately withheld the newly asserted ground or otherwise abused the writ.' " (*Id.*, at p. 449, fn. 10 [91 L.Ed.2d at p. 378], quoting 28 U.S.C. § 2244(b).)

In his opinion for a plurality of the court, Justice Powell recognized that the statute had been adopted after Congress had recognized the need to weigh the petitioner's interest against the interest of the state in administering its criminal justice system. The court still had an obligation to consider whether the "ends of justice" would be served if a successive petition was dismissed, but should entertain a successive petition only in "rare instances." It was therefore incumbent on the court to define "ends of justice" in a

manner that would serve the purpose of giving finality to federal habeas corpus judgments while preserving the function of habeas corpus in providing relief from unjust incarceration. The issue facing the Supreme Court was, therefore, not unlike that before this court.

The plurality opinion recognized that even where earlier proceedings have determined that the trial was free from constitutional error, "a prisoner retains a powerful and legitimate interest in obtaining his release from custody if he is innocent of the charge for which he was incarcerated. That interest does not extend, however, to prisoners whose guilt is conceded or plain." (*Kuhlmann* v. *Wilson, supra,* 477 U.S. 436, 452 [91 L.Ed.2d 364, 379-380] (plur. opn. by Powell, J.).)

The plurality then recognized the state's countervailing interest in the finality of its judgments, deterrence of crime, punishment and rehabilitation of the prisoner, and the impact of a delayed reversal of the judgment on the ability of the state to retry a prisoner, and concluded: "[T]he 'ends of justice' require federal courts to entertain such petitions only where the prisoner supplements his constitutional claim with a colorable showing of factual innocence. This standard was proposed by Judge Friendly more than a decade ago as a prerequisite for federal habeas review generally. [Citation.] As Judge Friendly persuasively argued then, a requirement that the prisoner come forward with a colorable showing of innocence identifies those habeas petitioners who are justified in again seeking relief from their incarceration." (*Kuhlmann* v. *Wilson, supra,* 477 U.S. 436, 454 [91 L.Ed.2d 364, 381-382] (plur. opn. of Powell, J.).)

When the Supreme Court revisited the question of abuse of the writ of habeas corpus,[23] and in particular the problem of piecemeal presentation of issues in successive petitions, in *McCleskey, supra,* 499 U.S. 467, the court

---

[23]Rule 9 of the Rules Governing [28 United States Code] Section 2254 Cases in the United States District Courts addresses both delayed and successive petitions, providing:

"(a) Delayed petitions. A petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred.

"(b) Successive petitions. A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petition to assert those grounds in a prior petition constituted an abuse of the writ." (28 U.S.C.A. rule 9, foll. § 2254.)

The Advisory Committee Note explains: "This rule is intended to minimize abuse of the writ of habeas corpus by limiting the right to assert stale claims and to file multiple petitions." (Note foll. rule 9, 28 U.S.C.A. foll. § 2254.)

concluded that if the petitioner did not establish cause for the failure to present a claim in a prior petition and prejudice from the error, a successive petition presenting a new claim should be entertained only if a "fundamental miscarriage of justice" would result from a failure to do so. (*Id.*, at pp. 494-495 [113 L.Ed.2d at p. 545].) The court noted the reasoning of the plurality in *Kuhlmann* v. *Wilson, supra,* 477 U.S. 436, and concluded that a "fundamental miscarriage of justice" would satisfy the "ends of justice" requirement of federal law. In so doing it apparently embraced the view of the *Kuhlmann* plurality that only imprisonment notwithstanding factual innocence would constitute that "fundamental miscarriage of justice," stating: "The miscarriage of justice exception to cause serves as 'an additional safeguard against compelling an innocent man to suffer an unconstitutional loss of liberty,' *Stone* v. *Powell,* 428 U.S. at 492-493, n 31 [49 L.Ed.2d at p. 1086], guaranteeing that the ends of justice will be served in full." (499 U.S. at p. 495 [113 L.Ed.2d at pp. 545-546].) Then, after holding that the petitioner there had not met the "cause and prejudice" test for the late presentation of his claim that a confession had been elicited in violation of *Massiah* v. *United States* (1964) 377 U.S. 201 [12 L.Ed.2d 246, 84 S.Ct. 1199], the court refused to entertain the claim on the merits to correct a "miscarriage of justice" because "[t]he *Massiah* violation, if it be one, resulted in the admission at trial of truthful inculpatory evidence which did not affect the reliability of the guilt determination. The very statement McCleskey now seeks to embrace confirms his guilt. . . . McCleskey cannot demonstrate that the alleged *Massiah* violation caused the conviction of an innocent person." (499 U.S. at p. 502 [113 L.Ed.2d at p. 550].)[24]

More recently, the Supreme Court considered how the factual innocence standard was to be applied in establishing whether a fundamental miscarriage of justice warranted consideration of a state prisoner's successive habeas corpus petition attacking imposition of the death penalty. In *Sawyer* v. *Whitley* (1992) 505 U.S. __ [120 L.Ed.2d 269, 112 S.Ct. 2514], the court held that to establish that the ends of justice warranted consideration of an abusive, successive, or defaulted constitutional claim, a state prisoner's petition for writ of habeas corpus must show by clear and convincing

---

[24]The Eleventh Circuit adapted the "factual innocence" test to penalty phase error in *Moore* v. *Kemp* (11th Cir. 1987) 824 F.2d 847. The court found guidance in *Smith* v. *Murray* (1986) 477 U.S. 527 [91 L.Ed.2d 434, 106 S.Ct. 2661], in which the Supreme Court refused to consider penalty phase error on procedural default grounds. There the Supreme Court had indicated that the trial court's error in admitting evidence "neither precluded the development of true facts nor resulted in admission of false ones ". . . [and] did not serve to pervert the jury's deliberations concerning . . . whether *in fact* petitioner constituted a continuing threat to society." (477 U.S. at p. 538 [91 L.Ed.2d at pp. 446-447].) Building on that suggestion in *Moore* v. *Kemp, supra,* 824 F.2d at page 857, the circuit court remanded to the district court to consider whether the error in that case "materially altered the [sentencing profile]."

evidence that, absent constitutional error or deprivation, no reasonable juror would have found the petitioner eligible for the death penalty.

Applying that standard in the case before it, the court noted that in Louisiana, the state in which the petitioner had been convicted of capital murder and sentenced to death, eligibility for the death penalty was based on conviction of capital murder and a finding that aggravating factors outweighed mitigating factors. Therefore, the sentencer was required to find the existence of at least one aggravating factor or the defendant could not be sentenced to death. Mitigating evidence that trial counsel had not presented was held to be irrelevant to actual innocence of the death penalty (and thus to finding a fundamental miscarriage of justice) since it could not be said that no reasonable jury would have found the petitioner eligible for the death penalty had the evidence been before it. However, other evidence not available to the petitioner because of an alleged violation of *Brady* v. *Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215, 83 S.Ct. 1194] was relevant both to the finding that the petitioner had committed first degree murder, and the finding that the murder was committed in the course of aggravated arson, the requisite aggravating circumstance. Relief was nonetheless denied because the petitioner had not shown by clear and convincing evidence that, in light of all of the evidence in the record, the new evidence was such that no rational juror would have found the petitioner guilty of the aggravated arson, or of the other aggravating circumstance, had the evidence been before the jury. (505 U.S. at p. __ [120 L.Ed.2d at p. 286].)[25]

The federal test, based on a statute limiting federal habeas corpus review of a state prisoner's claims to those based on alleged deprivation of constitutional rights, and limiting review on successive petitions to circumstances in which consideration of the successive petition was justified in the ends of justice because a fundamental miscarriage of justice had occurred, is not controlling here. As noted above, the scope of review on habeas corpus in this state is not limited to error of constitutional dimension. Newly discovered evidence may also be the basis for relief. Therefore, it is appropriate to also consider the exceptions to procedural bars which are recognized by the courts of our sister states.

---

[25]The Ninth Circuit has recently concluded that in a state where eligibility for the death penalty is determined only by weighing aggravating and mitigating factors against one another, constitutional error related to mitigating evidence may be considered under *Sawyer* v. *Whitley, supra,* 505 U.S. __ [120 L.Ed.2d 269]. In *Deutscher* v. *Whitley* (9th Cir. 1993) 991 F.2d 605, the court held that mitigating evidence withheld from the jury because of counsel's incompetence could be considered because, under the applicable Nevada statutes, the death penalty could not be imposed unless the jury found at least one aggravating circumstance, and further found that there were no mitigating circumstances sufficient to outweigh aggravating circumstances found. However, the petitioner failed to show by clear and convincing evidence that had the evidence been before the jury no reasonable juror would have found him eligible for the death penalty.

## 2. State court limitations.

The problem of ensuring the availability of habeas corpus and equivalent postconviction remedies to correct fundamental error which has resulted in imprisonment of a criminal defendant, while controlling abuse of the writ, is not new. (See Robson & Mello, *Ariadne's Provisions: A "Clue of Thread" to the Intricacies of the Procedural Default, Adequate and Independent State Grounds, and Florida's Death Penalty* (1988) 76 Cal.L.Rev. 87; Goldstein, *Application of Res Judicata Principles to Successive Federal Habeas Corpus Petitions in Capital Cases: The Search for an Equitable Approach* (1987) 21 U.C. Davis L.Rev. 45; Catz, *Federal Habeas Corpus and the Death Penalty; Need for a Preclusion Doctrine Exception* (1985) 18 U.C. Davis L.Rev. 1177; Comment, *Repetitive Post-Conviction Petitions Alleging Ineffective Assistance of Counsel: Can the Pennsylvania Supreme Court Tame the "Monster?"* (1982) 20 Duq. L.Rev. 237.)

Like California, most states have statutory and/or judicially created limitations on successive petitions.[26] Some of these states have also attempted to articulate rules, and to achieve consistent application of rules, governing exceptions to the limitations imposed on successive petitions.[27] Others have no express standards.

[26]See, e.g., Alabama Temporary Rules of Criminal Procedure, rule 20.2; *Blount v. State* (Ala.Cr.App. 1990) 572 So.2d 498, 501; Florida Rules of Criminal Procedure, rule 3.850; *Francis v. Barton* (Fla. 1991) 581 So.2d 583; Illinois Revised Statutes 1965, chapter 38, paragraph 122-3; *People v. Polansky* (1968) 39 Ill.2d 84 [233 N.E.2d 374]; Kentucky Rules of Criminal Procedure, rule 11.42; *DeWeese v. Commonwealth* (Ky.Ct.App. 1966) 407 S.W.2d 402, 403; *Ingram v. Warden* (Md.Ct.App. 1960) 222 Md. 621 [159 A.2d 853, 854]; Montana Code Annotated section 46-21-101 (1992); Oregon Revised Statutes 138.510-138.680, 138.550(4) (1991); *Macomber v. Gladden* (1959) 216 Ore. 579 [337 P.2d 971]; Pennsylvania Post Conviction Relief Act, 42 Pennsylvania Consolidated Statutes Annotated, section 9541; *Hurst v. Cook* (Utah 1989) 777 P.2d 1029, 1037; Washington Rules of Appellate Procedure, rule 16.4; *Matter of Jeffries* (1990) 114 Wn.2d 485 [789 P.2d 731]; Wyoming Statutes section 7-408.3 (1963).

[27]New Jersey appears not to have done so. The New Jersey Supreme Court, reasoning that a ruling on a habeas corpus petition is not res judicata, held in a controlling 1954 opinion that successive applications for relief are permissible, and that a prior denial of relief is not conclusive although recognition will be given to previous factual findings. (*State v. Ingenito* (1954) 16 N.J. 36 [106 A.2d 3].)

In an opinion acknowledging that rule, the Appellate Division of the New Jersey Superior Court has noted that the courts nonetheless have the power to protect themselves from abuse of the writ. "While the principle of *res adjudicata* is not strictly applicable to proceedings involving the Great Writ, since a prisoner is not limited to but one opportunity to regain his freedom [citation], it is settled that the previous litigation is subject to scrutiny on the new application for relief and that the court may consider relevant earlier judicial findings on issues common to both. [Citation.]

"The abuse of the writ by repeated applications . . . was curtailed in the federal jurisdiction by a statute . . . . While we have here no statutory counterpart to achieve finality in this type of litigation, and although similar abuses have become apparent (*State v. Bey*, 29

The Pennsylvania experience is instructive. In 1980, the Pennsylvania Post Conviction Hearing Act (PCHA), 42 Pennsylvania Consolidated Statutes section 9541 et seq. (now the Post Conviction Relief Act), included an exception to its rules which deemed an issue "finally litigated" or "waived" on bases similar to those applied by this court. That exception permitted the court to consider the merits of a PCHA petition notwithstanding those bars if the petitioner was able "to prove the existence of extraordinary circumstances to justify his failure to raise the issue." (Act of Jan. 25, 1966, Pa. Laws 1580 (1965) § 4, 19 Pa. Stats. § 1180-4 (Supp. 1979-1980).) Construing the "extraordinary circumstances" exception in *Com.* v. *Watlington* (1980) 491 Pa. 241 [420 A.2d 431], the Pennsylvania Supreme Court held that serial ineffectiveness of appellate and succeeding counsel in failing to allege the ineffectiveness of prior counsel and trial counsel constituted an extraordinary circumstance.

By 1988 the *Watlington* rule had proved itself inadequate to stem the tide of successive petitions and was abandoned. In *Com.* v. *Lawson* (1988) 519 Pa. 504 [549 A.2d 107], the Pennsylvania Supreme Court addressed the "vexing problem of repetitive petitions." (*Id.*, at p. 108.) "This appeal evidences the problems that can arise if we permit post-conviction relief to destroy any concept of finality in our decisional process in the area of criminal law. . . . [I]ts importance to the integrity of our system of jurisprudence requires our attention, . . ." (*Id.*, at p. 110.) The court concluded that the intent of the Legislature, as reflected in the PCHA, to curtail continuing assaults on judgments, had been undermined by "overly generous judicial decisions [which] have in fact permitted the magic words 'ineffective assistance of prior counsel,' regardless of the number of prior counsel, to be equated with the concept of 'extraordinary circumstances. . . .'" (*Id.*, at p. 111.)

The solution was to dismiss without hearing a second or subsequent application for postconviction relief "unless a strong *prima facie* showing is offered to demonstrate that a miscarriage of justice may have occurred. [¶] . . . [¶] We hold today that the mere assertion of ineffective assistance of counsel is not sufficient to override the waiver and 'finally litigated' provisions in the P.C.H.A., as to permit the filing of repetitive or serial petitions

---

N.J.Super. 331, 102 A.2d 684 (App.Div. 1954)), our courts have not hesitated to 'ascribe influential, but not necessarily controlling weight to findings in the prior proceeding' [citations] in an exercise of their undoubted power to protect this privileged writ of freedom from pollution by the filing of successive and repetitious applications therefor by a pertinaceous relator [citations]." (*Worbetz* v. *Goodman* (1957) 47 N.J.Super. 391 [136 A.2d 1, 4 (App.Div. 1957)]. See also *State* v. *DeLucia* (1960) 63 N.J.Super. 90 [164 A.2d 81, 83 (App.Div. 1960)] ["Having on a previous occasion considered and rejected defendant's assertions . . . , this court may now exercise its power to shield itself from a defendant's abuse of the writ of *habeas corpus.*"].)

under the banner of that statute. A repetitive or serial petition may be entertained only for the purpose of avoiding a demonstrated miscarriage of justice, which no civilized society can tolerate." (549 A.2d at p. 112, fn. omitted.)

The new *Lawson* standard is satisfied "if the petitioner can demonstrate either: (a) that the proceedings resulting in his conviction were so unfair that a miscarriage of justice occurred which no civilized society can tolerate or (b) that he is innocent of the criminal charges." (*Com.* v. *Laskaris* (1991) 407 Pa.Super. 440 [595 A.2d 1229, 1231]; *Com.* v. *Ryan* (1990) 394 Pa.Super. 373 [575 A.2d 949, 950].)

Other states require "cause" in all instances and require a showing of a miscarriage of justice before the merits of a successive petition will be considered. Alabama's Appellate Rules of Criminal Procedure establish that state's standard. Rule 20.2(b) of the Alabama Appellate Rules of Criminal Procedure provides: "The court shall not grant relief on a second or successive petition on the same or similar grounds on behalf of the same petitioner. A second or successive petition on different grounds shall be denied unless the petitioner shows both that good cause exists why the new ground or grounds were not known or could not have been ascertained through reasonable diligence when the first petition was heard, and that failure to entertain the petition will result in a miscarriage of justice."

The Florida rule does not reflect any exception, permitting summary denial of successive postconviction motions for relief "unless the movant alleges that the asserted grounds were not known and could not have been known to the movant at the time the initial motion was filed." (*Christopher* v. *State* (Fla. 1986) 489 So.2d 22, 24.)

In Illinois, "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." (Ill. Rev. Stat., ch. 38, par. 122-3 (1965).) " 'The prior denials of the post-conviction petitions are *res judicata* of all claims raised therein and of all constitutional claims which could have been raised.' " (*People* v. *Polansky, supra*, 233 N.E.2d 374, 375. See also, *People* v. *Holland* (1965) 33 Ill.2d 246 [211 N.E.2d 265].)

Ohio law permits the court "in its discretion and for good cause shown" to consider second or successive petitions whether based on the same facts or on newly discovered evidence. (Ohio Rev. Code Ann., § 2953.23(A) (Anderson 1993).) "Accordingly, . . . a trial court is not required to file findings of fact and conclusions of law when declining to entertain a second

or successive petition for post-conviction relief which alleges the same grounds as earlier petitions." (*State ex rel. Workman* v. *McGrath* (Ohio 1988) 532 N.E.2d 105, 106.)

New York recognizes that res judicata principles do not bar successive petitions on the same grounds, but notes that "orderly administration requires at least a showing of changed circumstances." (*People ex rel. Woodard* v. *Berry* (1990) 163 A.D.2d 119 [559 N.Y.S.2d 46, 47.) A successive petition with no new ground may not be entertained. (*People ex rel. Sassower* v. *Cunningham* (1985) 112 A.D.2d 119 [492 N.Y.S.2d 608, 609].)

In Oregon a petitioner who was represented by counsel in a prior post-conviction proceeding is foreclosed from reasserting a claim that was denied in the prior proceeding, and from asserting new claims that could reasonably have been asserted in the prior proceeding. (*Jensen* v. *Gladden* (1963) 233 Or. 439 [378 P.2d 950].)

Utah Rules of Civil Procedure, rule 65B(7) provides that a claim will be dismissed as "frivolous on its face" "if it is apparent that the issues presented in the petition have already been adjudicated. . . ."

The Utah Supreme Court has observed that "the law is not powerless to prevent abuse by prisoners who burden the courts and frustrate the ends of justice by trying to keep a case alive indefinitely. The law can and does protect itself against vexatious and abusive successive petitions for writs." (*Hurst* v. *Cook* (Utah 1989) 777 P.2d 1029, 1036.) The court then held that "a prior adjudication of the same ground for relief is sufficient to bar relitigation on that ground absent unusual circumstances. A showing of good cause that justifies the filing of a successive claim may be established by showing (1) the denial of a constitutional right pursuant to a new law that is, or might be, retroactive . . . , (2) new facts not previously known which would show the denial of a constitutional right or might change the outcome of the trial . . . , (3) the existence of fundamental unfairness in a conviction, (4) the illegality of a sentence . . . , or (5) a claim overlooked in good faith with no intent to delay or abuse the writ. . . . The burden in a second petition is on the petitioner 'to show that the ends of justice would be served by permitting the redetermination on that ground.' " (*Id.*, 777 P.2d at p. 1037, fn. omitted.)

In Washington "[n]o more than one petition for similar relief on behalf of the same petitioner will be entertained without good cause shown." Wn. Rules App. Proc., rule 16.4(d); *Matter of Jeffries, supra,* 789 P.2d 731.)[28]

### 3. *California standard.*

Petitioner does not address the criteria to be applied by the court in considering whether the merits of an unjustified successive or untimely petition which does not fit within the limited exceptions we have identified should be considered. He argues instead that there should be no bar to consideration of a possibly meritorious habeas corpus petition, and that relief should be available whenever it appears that a miscarriage of justice within the meaning of article VI, section 13 of the California Constitution has occurred.[29] Article VI, section 13 has no application in this context. It precludes reversal of a judgment on the basis of a harmless error and thereby serves to limit the jurisdiction of the court in the exercise of its appellate powers, but does not create a right to relief or excuse procedural defaults. More importantly, it is inapplicable in habeas corpus proceedings. (*Ex parte Bathurst* (1929) 98 Cal.App. 552 [277 P. 201].)

The court does, as petitioner notes, apply a similar test in determining whether a habeas corpus petitioner has demonstrated that he suffered prejudice as a result of a matter of which he complains. (See *In re Martin* (1987) 44 Cal.3d 1, 51 [241 Cal.Rptr. 263, 744 P.2d 374].) That observation is irrelevant, however, since procedural bars preclude consideration of claims sought to be raised in a successive or untimely habeas corpus petition just as they bar claims made on appeal. The question to be decided is when, if ever, should the court reach the merits of an untimely or successive petition for writ of habeas corpus which has not been justified by the petitioner,[30] not what standard should be applied to determine if the claims afford a basis for relief on habeas corpus.

Respondent argues that this court should adopt the standards applicable to federal habeas corpus review of successive petitions by state prisoners,

[28]For a summary of the postconviction remedies available to prisoners in each state see Wilkes, Federal and State Postconviction Remedies and Relief (1992), chapter 9 and appendix A.

[29]Article VI, section 13 provides: "No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

[30]Petitioner argues strongly that a "statute of limitations" for habeas corpus petitions would be unprecedented. We agree, but no such limitation has been imposed or is contemplated. We do no more than apply the well-established rule that any substantial delay in seeking relief by petition for writ of habeas corpus must be explained and justified. This rule cannot fairly be analogized to a statute of limitations.

including the limitation on petitions attacking the penalty phase of a capital trial announced in *Sawyer* v. *Whitley, supra,* 505 U.S. __ [120 L.Ed.2d 269, 112 S.Ct. 2514]. No reason beyond the benefit of uniformity of analysis is proffered for adopting for state purposes the limitations which are imposed by statute on federal courts.

We believe the Pennsylvania and federal approaches to unjustified successive applications for postconviction relief, looking to a fundamental miscarriage of justice, have much to commend them. They attempt to ensure that regardless of delay or procedural default relief will always be available to a petitioner who is innocent of the offense for which he was convicted. However, the federal rule, to date, applies only if error of constitutional magnitude contributed to his conviction. The high court has not yet allowed consideration of newly discovered evidence of innocence. Moreover, the Pennsylvania standard by which the right to relief is measured—proceedings so unfair that "no civilized society can tolerate" the resulting miscarriage of justice—does not articulate a rule capable of consistent application, and is not readily adaptable to penalty verdicts in capital cases.[31]

A refusal to consider a claim of factual innocence based on newly discovered evidence would be constitutionally suspect in a capital case. A majority of the justices of the United States Supreme Court have expressed a belief that the Eighth and Fourteenth Amendments preclude execution of an innocent person. Their statements imply that in a capital case a claim of actual innocence of the crime of which the petitioner stands convicted must be considered regardless of when it is raised or if constitutional error affected the verdict. (*Herrera* v. *Collins* (1993) 506 U.S. __ [122 L.Ed.2d 203, 113 S.Ct. 853], opns. of O'Connor, J. [joined by Kennedy, J.], White, J., and Blackmun, J. [joined by Stevens and Souter, JJ.].) We are persuaded

---

[31]Justice Kennard recognizes that the state has a compelling need for rules that require timely presentation of challenges to the judgments in capital cases where petitioners, unlike prisoners who are not under sentence of death, have a strong incentive for delay. The Pennsylvania standard which she would adopt encourages the delay which our rule seeks to deter. None of the hypotheticals she posits actually reflects the potential injustice she fears may occur to a petitioner who in good faith believes that delay in presentation of a claim is justified or who is simply "negligent" in failing to discover a claim.

It is inconceivable that a defendant alleged to have committed prior uncharged crimes does not know at the time of trial that he did not commit those crimes, that he might "negligently" fail to discover available evidence to disprove the allegation, or that he might have a good faith belief that he could delay presenting such crucial evidence promptly in a habeas corpus petition. Similarly, it would be apparent at the time of trial that no mitigating evidence has been presented. No competent appellate counsel would fail to include such a claim in a habeas corpus petition filed in conjunction with the automatic appeal. Were we to adopt the subjective Pennsylvania standard to accommodate the mythical petitioner who "negligently" failed to present those claims, or a claim based on bribery of one or more jurors, in a timely petition, we would create, not reduce, incentive to delay.

by those views that such claims should be considered regardless of delay or failure to include the claim in a prior petition and irrespective of whether constitutional error contributed to the verdict.

Since this court is not limited, as the federal courts are, to granting relief only on the basis of constitutional error, we may also entertain claims that mitigating evidence that was not presented to the jury warrants relief from a judgment imposing the death penalty. Therefore, if the petitioner can demonstrate that the evidence would have so radically altered the profile of the petitioner that no reasonable judge or jury would have sentenced the petitioner to death, this claim too will be considered notwithstanding the petitioner's failure to justify delay or presentation in a successive petition.

## IV. CONCLUSION

Although we conclude here that it should not be inflexible, the general rule is still that, absent justification for the failure to present all known claims in a single, timely petition for writ of habeas corpus, successive and/or untimely petitions will be summarily denied. The only exception to this rule are petitions which allege facts which, if proven, would establish that a *fundamental* miscarriage of justice occurred as a result of the proceedings leading to conviction and/or sentence.

The magnitude and gravity of the penalty of death persuades us that the important values which justify limits on untimely and successive petitions are outweighed by the need to leave open this avenue of relief. Thus, for purposes of the exception to the procedural bar against successive or untimely petitions, a "fundamental miscarriage of justice" will have occurred in any proceeding in which it can be demonstrated: (1) that error of constitutional magnitude led to a trial that was so fundamentally unfair that absent the error no reasonable judge or jury would have convicted the petitioner;[32] (2) that the petitioner is actually innocent of the crime or crimes

---

[32]We cannot anticipate what claims of this nature might be made notwithstanding the exacting nature of the appeal process in a capital case. Conceivably, however, a petitioner who had not raised any issues relative to the guilt phase in his automatic appeal, might claim for the first time in a delayed or successive petition that the trial court erroneously excluded crucial defense evidence with the result that the defendant was denied his constitutional right to present a defense. To state a prima facie case for relief on this ground the petitioner would have to persuade the court that had the excluded evidence been presented, he would have been acquitted or convicted of a lesser offense.

As is required when newly discovered evidence is the basis for a habeas corpus petition, the evidence must be such that it would "undermine the entire prosecution case and point unerringly to innocence or reduced culpability." (*People* v. *Gonzalez, supra*, 51 Cal.3d 1179, 1246.)

of which the petitioner was convicted;[33] (3) that the death penalty was imposed by a sentencing authority which had such a grossly misleading profile of the petitioner before it that absent the trial error or omission no reasonable judge or jury would have imposed a sentence of death;[34] (4) that the petitioner was convicted or sentenced under an invalid statute. These claims will be considered on their merits even though presented for the first time in a successive petition or one in which the delay has not been justified.[35]

Petitioners should not assume that an eleventh-hour petition, even one claiming actual innocence, will automatically lead to an order staying execution of judgment or that the court will delay action on the petition until the respondent has submitted an informal response.[36] Deliberate delay for the purpose of obtaining a last-minute stay is an abuse of the writ which may,

---

[33]A petition in this category might offer newly discovered, irrefutable evidence of innocence of the offense or degree of offense of which the petitioner was convicted. Although the evidence could and should have been discovered earlier, the delay in making the claim would not be a bar to consideration of the merits of the petition if the petitioner satisfied the court that the evidence was such that it would "undermine the entire prosecution case and point unerringly to innocence or reduced culpability." (*People* v. *Gonzalez, supra*, 51 Cal.3d 1179, 1246.) Evidence relevant only to an issue already disputed at trial, which does no more than conflict with trial evidence, does not constitute " 'new evidence' that fundamentally undermines the judgment.' " (*Id.*, at p. 1247.)

Again, the petitioner would bear a heavy burden of satisfying the court that the evidence of innocence could not have been, and presently cannot be, refuted. The requirement that a petitioner demonstrate his or her innocence requires more than a showing that the evidence might have raised a reasonable doubt as to the guilt of the petitioner. The petitioner must establish actual innocence, a standard that cannot be met with evidence that a reasonable jury could have rejected.

[34]Accurate evidence relevant to a petitioner's culpability and the appropriateness of the death penalty does not paint a "grossly misleading" picture of a defendant within the meaning of this exception regardless of whether the evidence was erroneously admitted. False or perjured evidence may do so.

However, a "grossly misleading profile" is not one which simply fails to alert the jury to some potentially mitigating evidence. The picture of the defendant painted by the evidence at trial must differ so greatly from his or her actual characteristics that the court is satisfied that no reasonable judge or jury would have imposed the death penalty had it been aware of the defendant's true personality and characteristics.

[35]As our past decisions demonstrate, California practice differs from federal practice in that the petitioner filing a petition for writ of habeas corpus in a court of this state bears the initial burden of alleging the facts on which he relies to explain and justify delay and/or a successive petition. The court will take judicial notice of its own records and of the prior petitions filed by or on behalf of a petitioner. (Evid. Code, § 452.) Because the record of the appeal and of any prior petition is readily available to this court, unlike the federal court we need not solicit or await opposition in which the respondent asserts delay or abuse of the writ as an affirmative defense before summarily denying a successive petition or one in which unreasonable delay is reflected on the face of the petition.

[36]Not only is there no requirement that a petition for writ of habeas corpus challenging the validity of a judgment of conviction be served prior to filing (see §§ 1474, 1478), but the burden on respondents to reply to the several thousand delayed and successive petitions filed

inevitably, raise questions regarding the petitioner's good faith and/or veracity.

## V. Disposition

 Petitioner has not stated specific facts to establish that his newly made claims were presented without substantial delay as required by Policies, standard 1-1.2. Other claims have been rejected previously. None of the claims is shown to have resulted in a fundamental miscarriage of justice as we have defined it for purposes of invoking an exception to the procedural bar applicable to the petition. Therefore, the court will not consider the merits of any of the claims.

The order to show cause is discharged and the petition for writ of habeas corpus denied.

Panelli, J., Arabian, J., and George, J., concurred.

**LUCAS, C. J.,** Concurring.—I generally agree with the reasoning and conclusions in the majority opinion, but write separately to emphasize a few points.

1. *The Supreme Court Policies Regarding Cases Arising From Judgments of Death*

As the majority opinion recognizes, this court promulgated the Supreme Court Policies Regarding Cases Arising From Judgments of Death, policy 3 (hereafter Supreme Court Policies), to facilitate and standardize the filing of petitions for writs of habeas corpus in capital cases. These Supreme Court Policies, announced in 1989 and since amended, established, inter alia, timeliness requirements for habeas corpus petitions related to death penalty cases.

As originally adopted, standard 1-1 stated: "Appellate counsel in capital cases shall have a duty to investigate factual and legal grounds for filing a petition for a writ of habeas corpus. . . ." (Supreme Court Policies, *supra*, policy 3, former std. 1-1.) Today's opinion clarifies the intended scope of

---

each year in this court, the courts of appeal, and the superior courts would be intolerable. (See *Palma* v. *U.S. Industrial Fasteners* (1984) 36 Cal.3d 171, 179-180 [203 Cal.Rptr. 626, 681 P.2d 893].)

During the 1990-1991 fiscal year 3,287 petitions for writs of habeas corpus in criminal matters were filed in the superior courts; 3,014 original proceedings in criminal matters were filed in the courts of appeal; and 1,022 original habeas corpus petitions were filed in this court. (II Jud. Council of Cal., 1992 Ann. Rep., Jud. Statistics for Fiscal Year 1990-1991.)

that duty, making clear it arises only if counsel has become aware of "triggering information" that would lead a reasonable attorney to initiate an investigation. In order to avoid confusion, we have also simultaneously modified standard 1-1 to reflect that clarification.

A hypothetical may prove helpful in illustrating the kind of information that would trigger the duty to investigate. For example, when, on review of the appellate record, counsel becomes "aware" that trial counsel presented no evidence in mitigation, this constitutes information that indicates a factual basis for a claim of ineffective trial counsel, and which triggers a duty to investigate (and, it follows, to discover facts concerning whether trial counsel was ineffective in that regard). The standard does not allow counsel to stand by until he or she happens to discover facts confirming that trial counsel conducted no penalty phase investigation, or until counsel happens to discover actual mitigating evidence that might have been presented at trial; instead, the standard requires that counsel act on "triggering information."

As originally adopted, standard 1-1.2 measured delay in raising a claim from the time petitioner or counsel *became aware of information indicating a factual basis for the claim and* became aware, or should have become aware, of the legal basis for the claim." (Supreme Court Policies, *supra*, policy 3, former std. 1-1.2, italics added.) The italicized phrase was designed to make clear that delay is measured from the time counsel became aware of information, i.e., "triggering facts," that would support investigation and eventual development of a claim. Today's opinion, which measures delay in presentation of a claim from the time petitioner or counsel "should have known" of the facts supporting a claim, again merely clarifies the prior formulation. (One who "became aware of information" that would support investigation and eventual development of a claim "should have known" of the facts supporting that claim.) Accordingly, in order to avoid any confusion, we have further clarified standard 1-1.2 by adopting explicitly the "should have known" formulation employed in today's opinion.

## 2. *Fundamental Miscarriage of Justice*

I agree that for unjustifiedly delayed or successive habeas corpus petitions, only those petitions alleging a fundamental miscarriage of justice should be heard. I have, however, some reservations regarding the majority opinion's articulation of the meaning and application of the fundamental miscarriage of justice exception.

The majority opinion states that the individual's interest in maintaining an avenue of relief outweighs the state's interest in the finality of its criminal

judgments in the following cases: "(1) that error of constitutional magnitude led to a trial that was so fundamentally unfair that absent the error no reasonable judge or jury would have convicted the petitioner; (2) that the petitioner is actually innocent of the crime or crimes of which he was convicted; (3) that the death penalty was imposed by a sentencing authority which had such a grossly misleading profile of the petitioner before it that absent the error or omission no reasonable judge or jury would have imposed a sentence of death; or (4) that the petitioner was convicted under an invalid statute." (Maj. opn., *ante*, at p. 759; see also *id.*, at pp. 797-798.)

At the threshold, I note that the majority opinion appears to permit a habeas corpus petitioner to gain review of an otherwise defaulted petition by simply "alleg[ing] facts which, if proven, would establish that a *fundamental miscarriage* of justice occurred. . . ." (Maj. opn., *ante*, at p. 797.) I would instead place a greater burden on such a habeas petitioner and require a person filing a delayed or successive petition—with no justification—to state at the beginning of the petition *why* a court should consider the petition at all, i.e., under which of the four exceptions the petition falls. In this way, such petitions can be more quickly evaluated, lessening the burden on the judiciary of reviewing petitions that are procedurally defaulted.

I also agree with the majority opinion that a petitioner who can show a fundamental constitutional error, as narrowly defined in the majority opinion, should be entitled to present the claim in an otherwise defaulted petition. I am, however, concerned that merely requiring the demonstration of *a prima facie case* of such error fails to give sufficient weight to the state's strong interest in the finality of its criminal judgments. We are, by definition, concerned here with litigants who had a chance to present a claim at trial, on appeal, and (usually) in a first habeas corpus petition. In such circumstances, I would apply a higher standard of proof. Thus, I would elevate the standard of cognizability for successive or delayed petitions and require the petitioner to allege facts demonstrating a fundamental constitutional error *by clear and convincing evidence*. (Cf. *Sawyer* v. *Whitley* (1992) 505 U.S. __, __ [120 L.Ed.2d 269, 285, 112 S.Ct. 2514].) By insisting on a higher degree of certainty, we both give proper weight to the state's interest in finality, and more easily eliminate the frivolous petitions while still retaining an avenue of relief for those who have legitimate legal claims.

I otherwise agree with the reasoning and conclusions of the majority, including the decision to discharge the order to show cause and deny the petition for a writ of habeas corpus.

**MOSK, J.,** Concurring and Dissenting.—I concur in the judgment.

The petition for writ of habeas corpus before this court collaterally attacks a judgment of death. In the words of Justice Holmes, the Great Writ "cuts through all forms and goes to the very tissue of the structure. It comes in from the outside, . . . and although every form may have been preserved opens the inquiry whether they have been more than an empty shell." (*Frank v. Mangum* (1915) 237 U.S. 309, 346 [59 L.Ed. 969, 987-988, 35 S.Ct. 582] (dis. opn. of Holmes, J.).) With that understanding, I have carefully reviewed the petition. After such scrutiny, I have concluded that it lacks merit. I would accordingly deny relief on that basis.

In all other respects, I dissent.

The majority do all that they can to tear the heart out of the Great Writ and to put in its place a knot of lifeless technicalities. Of course, they are condemned to failure. For the writ is greater than individual judges.

At first, the majority's excursus into California habeas procedure seems strange. Why do they write so many confused and confusing pages on this topic when they could deny the petition on the merits in a short and simple opinion?

On reflection, at least one of the majority's purposes becomes manifest. They seek to prevent federal courts from reviewing federal constitutional claims, especially in capital cases. Success in this endeavor turns on the adequacy and independence of any state procedural bar. (See, e.g., *Harris* v. *Reed* (1989) 489 U.S. 255, 260-262 [103 L.Ed.2d 308, 315-316, 109 S.Ct. 1038].) For its part, adequacy presupposes the regular and consistent application of the bar. (See, e.g., *Dugger* v. *Adams* (1989) 489 U.S. 401, 410, fn. 6 [103 L.Ed.2d 435, 445, 109 S.Ct. 1211].) Regularity and consistency, however, were not evident in the past. As the majority all but expressly concede, before today procedural "rules" were discretionary: they were invoked or not with a view toward furthering the interests of justice in the individual case. Regularity and consistency are not likely to present themselves in the future. The majority's procedural "rules" are indeterminate at their very core. As such, they lend themselves only to arbitrary and capricious operation.

Having said all that, I do not wish to be understood to tolerate abuse of the Great Writ. During almost 30 years on this court, I have refused to allow such conduct. I will not permit it now. But I know of only one sure way to discover abuse without defeating justice: to examine each petition on its own

facts. True, scrutiny of this sort requires the expense of considerable judicial resources, particularly in capital cases. That, however, is the cost of justice. Out of fidelity to our judicial oath, we must pay the price. I have and I shall.

For the reasons stated above, I would deny the petition for writ of habeas corpus, and would do so on the merits.

**KENNARD, J.,** Concurring and Dissenting.—The majority opinion alters our existing habeas corpus procedures in two significant respects. First, in part III.B. of the opinion, the majority establishes a general rule that all habeas corpus claims must be raised in a single petition, and that when a party files successive petitions asserting different claims, all later petitions must justify the failure to assert the claims in the first petition. Second, in part III.C., the majority holds that when a petitioner raises claims that would have warranted relief had they been timely asserted in an initial petition, but which were untimely or were omitted without justification from an earlier petition, this court will grant relief only in extremely limited circumstances.

I agree with the majority's first holding. Strong societal interests require the imposition of reasonable limits on successive petitions[1] for habeas corpus. I disagree, however, with the second holding, the impact of which will fall with particular force on death row inmates. When a habeas petition by a prisoner under sentence of death raises claims that should have been raised earlier, the majority's rigid standard, under which the petitioner must show that "no reasonable judge or jury" would have convicted the petitioner or returned a death verdict, will make it virtually impossible for this court ever to grant relief. I would adopt instead the test used by the Pennsylvania courts. Under that test, a court will consider a habeas corpus claim on its merits, even though the claim should have been asserted earlier, if the petitioner shows either factual innocence or procedural unfairness of such gravity that "no civilized society" can tolerate it. In my view, the Pennsylvania test, unlike the majority's unreasonably narrow standard, properly accommodates the competing interests. It gives death penalty prisoners a needed incentive to assert all their habeas claims in a prompt and orderly fashion, yet permits the writ of habeas corpus to serve its traditional function as a flexible procedural remedy of last resort to prevent severe and manifest injustice.

---

[1]Although for convenience I refer throughout this opinion to successive and untimely "petitions," I recognize that a habeas corpus petition may contain several claims for relief, some of which are untimely and some not, and that in a successive petition the petitioner may be able to justify his or her failure to raise some claims in the previous petition, but be unable to justify the failure to raise others. The court must examine the individual claims in such petitions, not the petition as a whole, to determine whether they are diligently raised.

I

The writ of habeas corpus, also known as the Great Writ, occupies a place of particular importance in our law. It is the last safeguard our judicial system provides for those members of society who have been convicted of a crime without a fair trial. When matters that do not appear in the trial record—such as defense counsel's unjustified failure to present material evidence of innocence or lesser culpability, or the prosecution's use of perjured testimony—have affected the outcome of the trial, habeas corpus offers the sole method by which an unjustly imprisoned inmate may obtain relief.

But the writ of habeas corpus is not without cost. Because the writ is a collateral attack on a final judgment of conviction,[2] it may undermine the societal interest in finality of criminal proceedings, by permitting repeated review and reanalysis of convictions following trials that were fundamentally fair. If abused, the writ of habeas corpus can waste precious resources and cause public disrespect for the judgments of our criminal courts. Thus, when devising procedural rules to govern the manner in which habeas corpus petitions may be filed, this court must try to reconcile two conflicting goals: to maximize judicial power to grant redress to persons unjustly imprisoned or sentenced to death, while simultaneously protecting society's interest in the finality of its judicial decisions.

One such procedural rule concerns the circumstances under which habeas petitioners are permitted to file a second petition after denial of the first one. This court has consistently held that the California judiciary should generally not entertain successive habeas petitions raising the *same* issue. (*In re Martin* (1987) 44 Cal.3d 1, 27, fn. 3 [241 Cal.Rptr. 263, 744 P.2d 374]; *In re Rodriguez* (1975) 14 Cal.3d 639, 654, fn. 18 [122 Cal.Rptr. 552, 537 P.2d 384]; *In re Lynch* (1972) 8 Cal.3d 410, 439, fn. 26 [105 Cal.Rptr. 217, 503 P.2d 921]; *In re Terry* (1971) 4 Cal.3d 911, 921, fn. 1 [95 Cal.Rptr. 31, 484 P.2d 1375]; *In re Miller* (1941) 17 Cal.2d 734, 735 [112 P.2d 10].) Until today, however, this court has not firmly established a similar rule barring

[2]This case involves solely claims raised on habeas corpus, not those raised on direct appeal. Habeas corpus permits a prisoner to raise a collateral attack on the legality of his or her confinement. Because issues that are or could be raised on appeal generally may not be raised on habeas corpus (*In re Waltreus* (1965) 62 Cal.2d 218, 225 [42 Cal.Rptr. 9, 397 P.2d 1001]; *In re Dixon* (1953) 41 Cal.2d 756, 759 [264 P.2d 513]), habeas corpus is most often used when, because the challenge to the legality of the commitment involves matters not shown in the appellate record, the petitioner's appellate remedy is inadequate.

successive petitions raising *different* issues.[3] As the majority explains, there are valid and substantial reasons supporting such a rule. Successive habeas petitions are a drain on limited judicial resources; it is less cumbersome for courts to consider all claims at one time than to address them in piecemeal fashion. Also, prosecutorial agencies should not be required to expend scarce taxpayer dollars to repeatedly defend a presumptively valid final judgment. Most important, society has a strong interest in the finality of judgments rendered by its courts. As one legal scholar put it: "A procedural system which permits an endless repetition of inquiry into facts and law in a vain search for ultimate certitude implies a lack of confidence about the possibilities of justice that cannot but war with the effectiveness of the underlying substantive commands [punishing criminal acts]. . . . There comes a point where a procedural system which leaves matters perpetually open no longer reflects humane concern but merely anxiety and a desire for immobility." (Bator, *Finality in Criminal Law and Federal Habeas Corpus for State Prisoners* (1963) 76 Harv. L.Rev. 441, 452-453.)

By adopting a rule that, whenever possible, all habeas claims must be raised in a single petition, this court does not unfairly burden those seeking relief. If a petitioner knows, or should know, of several possible grounds for relief, the petitioner should bring these grounds to the attention of the court at the same time. If a petitioner does file a successive petition raising new issues, it is reasonable to require the petitioner to explain the failure to raise those issues in a previous petition.

But if the habeas petitioner *can* justify the failure to raise in the previous petition the issues presented in the successive petition, the court should address the merits of those issues. For instance, an incarcerated inmate who is unrepresented by counsel and unaware of his or her legal rights may learn of a meritorious ground for relief only after unsuccessfully challenging the conviction on another ground. In that situation, the petitioner will have shown justification for the successive petition, thus warranting the court's consideration of the merits of the petition. Based on my understanding that such consideration will indeed be permitted, I join part III.B. of the majority opinion.

## II

I turn now to the difficult question of when this court should entertain a petition for writ of habeas corpus that, although meritorious, is either

---

[3]The majority points to language in several cases early in this century suggesting the existence of such a limitation. (Maj. opn., *ante*, pp. 767-768.) For almost 50 years, however, no published decision of any California court has acknowledged the existence of this limitation.

untimely or unjustifiably successive. This question is especially difficult when the petitioner, as in this case, has been sentenced to death. On the one hand, the state should not be permitted to put a person to death unless it has first given that person a fair trial. On the other hand, as I explain below, in capital cases the state has a particularly compelling need for rules that require the condemned prisoner to challenge the judgment in a timely manner.

Most defendants who challenge criminal convictions collaterally by means of a petition for writ of habeas corpus are prisoners who are serving their sentence in a penal institution. The hope of early release gives them a strong incentive to expedite the filing of a habeas petition, and they usually have little or nothing to gain by delaying the process. But for inmates on death row seeking habeas relief, the situation is otherwise. They, unlike other prisoners, have not yet begun to "serve" their sentence of death. Although a successful habeas petition by an incarcerated capital defendant may produce immediate benefits in the form of release from prison, retrial, or reduction of sentence, a court's final rejection of all habeas issues generally removes the last judicial barrier to execution. Because courts may grant stays of execution during the pendency of habeas corpus proceedings, prisoners facing a death sentence may seek to prolong their lives by ensuring that such proceedings are never finally concluded. Thus, death row inmates have an incentive to delay assertion of habeas corpus claims that is not shared by other prisoners.

To encourage prospective petitioners, and particularly those with an incentive for delay, to raise all their habeas claims promptly and in a single petition, courts must devise standards that make relief less readily available when a petition is untimely or unjustifiably successive.[4] But in fashioning an appropriate standard by which to judge these disfavored petitions, courts must be careful to preserve judicial authority to grant relief in cases of egregious illegality and gross injustice. To deny relief on procedural grounds to one who can persuasively demonstrate innocence, or whose guilt or punishment was determined in a manner that was grossly unfair, would betray traditional and deeply held convictions of our society. The need to preserve judicial authority to grant relief in these rare but deserving cases is particularly great in California, as I shall explain.

---

[4]Until today we have not had such a standard. My research has disclosed no case discussing the circumstances in which a court will consider an untimely petition for writ of habeas corpus on its merits. Our decisions have noted that our policy barring successive petitions raising the *same* issue is "discretionary," without explaining, however, when courts should exercise their discretion. (*In re Terry* (1971) 4 Cal.3d 911, 921, fn. 1 [95 Cal.Rptr. 31, 484 P.2d 1375]; *In re Bevill* (1968) 68 Cal.2d 854, 863, fn. 9 [69 Cal.Rptr. 599, 442 P.2d 679].) As I noted previously at pages 804-805, *ante*, until today there has been no firmly established rule in this state barring successive petitions that raise *different* issues.

In California, a particular habeas petition may be found to be untimely even though the petitioner has no desire to misuse the judicial process. For instance, the petitioner, or the petitioner's counsel, may believe in good faith that there are legitimate grounds for the delay in presenting the claim; the court, however, may find those grounds unpersuasive. Alternatively, the petitioner may raise a claim of which he or she was not, but should have been, aware at an earlier time. California courts may deny such a petition as untimely notwithstanding the petitioner's intent to comply fully with the policies. Under the majority opinion, the rules I just mentioned will also apply to successive petitions filed without justification.

Today, the majority adopts a rule that an untimely petition, or a successive petition that is unjustified, will be considered only if it shows that the petitioner has been subjected to a "fundamental miscarriage of justice." (Maj. opn., *ante*, p. 797.) The majority explains what it means by this term: a petitioner can obtain relief by showing "(1) that error of constitutional magnitude led to a trial that was so fundamentally unfair that absent the error no reasonable judge or jury would have convicted the petitioner; (2) that the petitioner is actually innocent . . . ; (3) that the death penalty was imposed by a sentencing authority which had such a grossly misleading profile of the petitioner before it that absent the trial error or omission no reasonable judge or jury would have imposed a sentence of death; or (4) that the petitioner was convicted or sentenced under an invalid statute." (Maj. opn., *ante*, pp. 759, 797-798, fns. omitted.)

I disagree with the majority's definition of "fundamental miscarriage of justice." The defects in the majority's definition are particularly glaring when the majority's "fundamental miscarriage of justice" test is applied to habeas petitions asserting irregularities at the penalty phase of a capital case. When the habeas petitioner is challenging the penalty phase, parts (1) and (2) of the majority's test are inapplicable, because they relate to evidence of guilt, not penalty. Part (4) is similarly inapplicable, unless the petitioner can show that California's death penalty law is invalid. Therefore, to prevail the petitioner would have to satisfy part (3) of the majority's test: that "absent the trial error . . . no reasonable judge or jury would have imposed a sentence of death." For a habeas petitioner who has not diligently sought relief, this requirement poses a nearly insurmountable hurdle. In almost every case in which a defendant has committed an act of capital murder rendering him or her eligible for the death penalty, a judge or jury could reasonably conclude that the murder warrants the death penalty. Thus, it will be virtually impossible for a petitioner who has filed an untimely or unjustifiably successive habeas petition to satisfy the majority's prerequisite for obtaining relief.

Three examples illustrate the undue harshness of the majority's test when applied to challenges to the penalty phase of a capital trial. In each, the habeas petitioner has not been diligent in presenting the claim, but has been subjected to a fundamental miscarriage of justice. In each instance, the majority rule would apparently bar relief.

1. At the penalty phase of a capital trial, the prosecution's only evidence in aggravation consists of proof that the defendant committed multiple uncharged acts of kidnap and rape. In a habeas petition the defendant shows conclusively that another person committed and was convicted of those crimes, and that the jury was thus presented with what the majority describes as a "grossly misleading profile" of the defendant. Yet a reasonable jury could, based on the circumstances of the capital offense alone, have imposed either a sentence of life without possibility of parole or a sentence of death.

2. At the penalty phase, the defendant's trial counsel, without justification, fails to present mitigating evidence. Had counsel presented such evidence, it is more probable than not that the jury would have imposed a sentence of life without possibility of parole, but a reasonable jury could have imposed a sentence of death. (See, e.g., *Deutscher* v. *Whitley* (9th Cir. 1993) 991 F.2d 605.)

3. Several jurors in a capital trial accept bribes to give the defendant the death sentence. The evidence presented at the penalty phase of the trial is such that a reasonable jury could have imposed either a sentence of life without possibility of parole or a sentence of death.

Apparently, none of these three instances would warrant relief under the majority's newly adopted test. I, however, am of the view that each of these illustrations demonstrates a "fundamental miscarriage of justice" of a magnitude that warrants relief even though the issue was raised in an untimely or an unjustifiably successive petition for writ of habeas corpus. When, as in the examples I have given, a defendant has been sentenced to death as a result of a trial that was egregiously unfair, to deny relief simply because the defendant's challenge to the trial has not been diligent would be offensive to traditional notions of justice. I cannot accept the majority's conclusion that the need to enforce our procedural rules is so great that we must deny relief even if the claim is as compelling as in the three examples I have given.

To enforce our procedural rules without sacrificing the power to remedy manifest injustice, this court should adopt a standard that would permit it to grant relief in the situations I have described, while at the same time creating a strong incentive for a petitioner to raise all claims in a diligent manner.

Such a standard has been adopted in Pennsylvania. Under the Pennsylvania decisions, which the majority cites in support of its "fundamental miscarriage of justice" test (maj. opn., *ante*, pp. 792-793, 796), a successive habeas petition will be entertained only "if the petitioner can demonstrate either: (a) that the proceedings resulting in his conviction were so unfair that a miscarriage of justice occurred which no civilized society can tolerate or (b) that he [or she] is innocent of the criminal charges." (*Com.* v. *Laskaris* (1991) 407 Pa.Super. 373 [595 A.2d 1229, 1231]; *Com.* v. *Ryan* (1990) 394 Pa.Super. 373 [575 A.2d 949, 950]; *Com.* v. *Lawson* (1988) 519 Pa. 504 [549 A.2d 107, 112].)

The majority deems the Pennsylvania test unsatisfactory because it is "not . . . a rule capable of consistent application, and is not readily adaptable to penalty verdicts in capital cases."[5] (Maj. opn., *ante*, p. 796, fn. omitted.) But the majority offers no showing that Pennsylvania, which like California has a death penalty law (42 Pa. Cons. Stat. Ann. § 9711), has found its standard "not readily adaptable" to capital cases. Unlike the majority's rigid rule, the Pennsylvania test enables the court to appropriately determine, when faced with the wide variety of issues that may arise on habeas corpus, whether the trial was so grossly unfair that the court should excuse the defendant's lack of diligence. Better to tolerate a certain degree of ambiguity than to bind ourselves in a rigid framework that will preclude relief when it is clearly warranted.[6]

### III

Today, the majority places new limits on the writ of habeas corpus, limits that will particularly affect death row prisoners. I agree with the majority

---

[5]The majority also contends that the Pennsylvania standard would "encourage" delay. (Maj. opn., *ante*, p. 796, fn. 31.) This assertion is puzzling, in view of the conclusion of the Pennsylvania courts that the standard has the opposite effect. The Pennsylvania standard may not be as effective a method of discouraging delay as the harsher test the majority adopts, but it strikes a fair balance between the need to redress gross injustice with the sometimes conflicting need to encourage compliance with procedural rules.

[6]The majority borrows, in a slightly modified form, its "no reasonable jury would have voted for death" test from the United States Supreme Court's decision in *Sawyer* v. *Whitley* (1992) 505 U.S. __ [120 L.Ed.2d 269, 112 S.Ct. 2514]. But the federal courts, although they apply the *Sawyer* test to successive petitions filed without justification (*id.* at p. 467 [120 L.Ed.2d at pp. 278-279, 112 S.Ct. at p. 2518]; *McCleskey* v. *Zant* (1991) 499 U.S. 488-490 [113 L.Ed.2d 517, 541-542, 111 S.Ct. 1454, 1468]), use a different test when a habeas petition is untimely. In federal court, an untimely habeas petition will nevertheless be considered unless the government can show that the unnecessary delay has prejudiced its ability to respond to the petition. (*Vasquez* v. *Hillery* (1986) 474 U.S. 254, 265 [88 L.Ed.2d 598, 610, 106 S.Ct. 617]; 2 Liebman, Federal Habeas Corpus Practice and Procedure (1988) § 36.4, p. 555.) In contrast, California courts may deny a petition as untimely regardless of prejudice to the prosecution's ability to respond to it. Thus, at least with respect to petitions that are untimely (as opposed to successive), the majority has adopted a more restrictive test than that used in the federal courts.

that strong societal interests justify reasonable limits on successive petitions for habeas corpus that may, without such limits, indefinitely delay execution of valid and final death judgments. I also agree that this court should not entertain such petitions unless the petitioner has shown a *fundamental* miscarriage of justice—that is, an unfairness of the type that, as defined under the Pennsylvania test, "no civilized society can tolerate." But the majority adopts a definition of "fundamental miscarriage of justice" that is unduly narrow and rigid. Consequently, this court may be compelled to deny relief to a defendant sentenced to death as a result of a grossly unfair trial, simply because the defendant ought to have brought the claim to us somewhat earlier. To preserve judicial authority to grant relief from judgments of death in the most deserving cases, I would use the standard devised and applied by the Pennsylvania courts.

Because in this case petitioner's application for a writ of habeas corpus is untimely, and because petitioner has not shown a fundamental miscarriage of justice—under either the majority's unyieldingly constrictive definition or the alternative definition I favor—I join in the majority's denial of the petition.

Petitioner's application for a rehearing was denied September 22, 1993. Mosk, J., and Kennard, J., were of the opinion that the application should be granted.

APPENDIX

Supreme Court Policies Regarding Cases Arising From Judgments of Death, Policy 3 ("Standards Governing Filing of Habeas Corpus Petitions and Compensation of Counsel In Relation to Such Petitions"), Part 1 ("Timeliness Standards"), last appearing in Pamphlet No. 2 of the 1993 Advance Sheets of the California Official Reports, Rules pages 3-7, is amended as follows [revised paragraphs are noted in brackets]:

## 3. STANDARDS GOVERNING FILING OF HABEAS CORPUS PETITIONS AND COMPENSATION OF COUNSEL IN RELATION TO SUCH PETITIONS

The Supreme Court promulgates these standards as a means of implementing the following goals with respect to petitions for writs of habeas corpus relating to capital cases: (i) ensuring that potentially meritorious habeas corpus petitions will be presented to and heard by this court in a timely fashion; (ii) providing appointed counsel some certainty of payment for authorized legal work and investigation expenses; and (iii) providing this court with a means to monitor and regulate expenditure of public funds paid to counsel who seek to investigate and file habeas corpus petitions.

For these reasons, effective June 6, 1989, all petitions for writs of habeas corpus arising from judgments of death, whether the appeals therefrom are pending or previously resolved, are governed by these standards:

### 1. Timeliness standards

1-1. *[Revised.]* Appellate counsel in capital cases shall have a duty to investigate factual and legal grounds for the filing of a petition for a writ of habeas corpus. The duty to investigate is limited to investigating potentially meritorious grounds for relief that have come to counsel's attention in the course of preparing the appeal. It does not impose on counsel an obligation to conduct, nor does it authorize the expenditure of public funds for, an unfocused investigation having as its object uncovering all possible factual bases for a collateral attack on the judgment. Instead, counsel has a duty to investigate potential habeas corpus claims only if counsel has become aware of information that might reasonably lead to actual facts supporting a claim. All petitions for writs of habeas corpus should be filed without substantial delay.

1-1.1 A petition for a writ of habeas corpus will be presumed to be filed without substantial delay if it is filed within 90 days after the final due date for the filing of appellant's reply brief on the direct appeal.

1-1.2 *[Revised.]* A petition filed more than 90 days after the final due date for the filing of appellant's reply brief on the direct appeal may establish absence of substantial delay if it alleges with specificity facts showing the petition was filed within a reasonable time after petitioner or counsel (a) knew, or should have known, of facts supporting a claim *and* (b) became aware, or should have become aware, of the legal basis for the claim.

1-1.3 Alternatively, a petition may establish absence of substantial delay if it alleges with specificity facts showing that although petitioner or counsel was aware of the factual and legal bases for the claim before January 16, 1986 (the date of finality of *In re Stankewitz* (1985) 40 Cal.3d 391, 396-397, fn. 1 [220 Cal.Rptr. 382, 384, fn. 1, 708 P.2d 1260, 1262, fn. 1]), the petition was filed within a reasonable time after that date.

1-2. If a petition is filed after substantial delay, the petitioner must demonstrate good cause for the delay. A petitioner may establish good cause by showing particular circumstances sufficient to justify substantial delay.

1-3. Any petition that fails to comply with these requirements may be denied as untimely.

### 2. Compensation standards

2-1. This court's appointment of counsel for a person under a sentence of death is for the following: (i) pleadings and proceedings related to preparation and certification of the

appellate record; (ii) representation in the direct appeal before the California Supreme Court; (iii) preparation and filing of habeas corpus petitions and other ancillary pleadings in the California Supreme Court; (iv) preparation and filing of a petition for a writ of certiorari, or an answer thereto, in the United States Supreme Court; (v) representation in the trial court relating to proceedings pursuant to Penal Code sections 1193 and 1227; and (vi) preparation and filing of a petition for clemency with the Governor of California no earlier than after exhaustion of the initial round of collateral challenges in federal court. Absent prior authorization by this court, this court will not compensate counsel for the filing of any other motion, petition, or pleading in any other California or federal court or court of another state. Counsel who seek compensation for representation in another court should secure appointment by, and compensation from, that court.

2-2. Appellate counsel should expeditiously investigate possible bases for filing a petition for a writ of habeas corpus. As a general rule, this investigation should be done concurrently with review of the appellate record and briefing on appeal. Requests by appointed counsel for authorization to incur, and reimbursement of, investigation expenses shall be governed by the following standards:

2-2.1 Without prior authorization of the court, counsel may incur expenses up to a total of $3,000 for habeas corpus investigation, and may submit to the court claims for reimbursement up to that amount. The court will reimburse counsel for expenses up to $3,000 that were reasonably incurred.

2-2.2 If after incurring $3,000 in expenses, counsel determines it is necessary to incur additional expenses for which he or she plans to seek reimbursement from the court, counsel must seek and obtain prior authorization from the court. As a general rule, the court will *not* reimburse counsel for expenses exceeding $3,000, without prior authorization of the court. Requests by appointed counsel for prior authorization of investigation expenses shall be governed by the following standards:

2-3. On or before the date the appellant's opening brief on appeal is filed, counsel shall file with this court a "Confidential request for authorization to incur expenses to investigate potential habeas corpus issues." The court will entertain an initial request filed at a later time only if good cause for the delay is shown.

2-4. The confidential request for authorization to incur expenses shall set out:

2-4.1 The issues to be explored;

2-4.2 Specific facts that suggest there may be an issue of possible merit;

2-4.3 An itemized list of the expenses requested for each issue of the proposed habeas corpus petition; and

2-4.4 (a) An itemized listing of all expenses previously sought from, and/or approved by any court of this state and/or any federal court in connection with any habeas corpus proceeding or investigation concerning the same judgment and petitioner; (b) A statement summarizing the status of any proceeding or investigation in any court of this state or any federal court concerning the same judgment and petitioner; and (c) A copy of any related petition previously filed in any trial or lower appellate court of this state or any federal court concerning the same judgment and petitioner.

2-5. Counsel generally will not be awarded compensation for fees and expenses relating to matters that are clearly not cognizable in a petition for a writ of habeas corpus.

2-6. Each request for fees relating to a habeas corpus petition must be accompanied by: (a) An itemized listing of all fees previously sought from, and/or approved by any court of this state and/or any federal court in connection with any habeas corpus proceeding or investigation concerning the same judgment and petitioner; (b) A statement summarizing the status of any proceeding or investigation in any court of this state or any federal court concerning the same judgment and petitioner; and (c) A copy of any related petition previously filed in any trial or lower appellate court of this state or any federal court concerning the same judgment and petitioner.