Filed 6/15/21  P. v. Silva CA2/5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B306507 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA380566) |
| v. | |
| FRANK SILVA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, John S. Fisher, Judge.  Affirmed.

Derek K. Kowata, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey,

Senior Assistant Attorney General, Idan Ivri and Yun K. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted defendant and appellant Frank Silva of first degree murder (Pen. Code, § 187, subd. (a)),[1] and found true an allegation that he personally and intentionally discharged a firearm causing great bodily injury or death (§ 12022.53, subd. (d)). After enactment of Senate Bill No. 1437 (Senate Bill 1437), Silva filed a petition for resentencing pursuant to section 1170.95. The trial court denied his petition without appointing counsel.

Silva contends that he was entitled to appointment of counsel because he filed a facially sufficient petition for resentencing. We reject this argument, and affirm the trial court's order. Filing a facially sufficient petition does not entitle a petitioner to appointment of counsel. Moreover, the jury's verdict of first degree murder, whether based upon either a theory of premeditation or felony murder where Silva was the actual killer, renders Silva ineligible for section 1170.95 relief as a matter of law.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

## FACTS AND PROCEDURAL HISTORY[2]

On the night of September 18, 2010, the victim was working as a disc jockey and selling nitrous oxide balloons at a rave party. He filled the balloons from a nitrous oxide tank. When inhaled, nitrous oxide produces a very short intoxicating effect. Silva approached the victim and asked about the price for the balloons. The victim told Silva two balloons cost $5. Silva said the price was too high, and walked away. Silva returned 15 or 20 minutes later. Silva again asked the victim about the price. The victim said he had lowered the price to three balloons for $5. Silva said it was still too expensive, and then said something else. In response, the victim nodded or shook his head. Silva turned as if to leave, then pulled out a gun and shot the victim. Silva picked up the nitrous oxide tank and walked away. Silva and the victim were standing face-to-face when Silva shot the victim in the chest. The victim died as a result of the gunshot wound.

As relevant here, the trial court instructed the jury on first degree murder under the theories of premeditation and felony murder (CALCRIM Nos. 520, 521, 540A). With respect to the felony murder theory, it was alleged that Silva personally committed the fatal act, and the jury was instructed under CALCRIM No. 540A that it must find that

---

[2] The facts are drawn from our prior unpublished opinion in *People v. Silva* (Aug. 29, 2013, B243796) (*Silva*), of which we have taken judicial notice.

"[w]hile committing . . . robbery, the defendant caused the death of another person[,]" before it could find Silva guilty of first degree murder under this theory.

The jury found Silva guilty of first degree murder (§ 187, subd. (a)), and found true the allegation that he personally and intentionally discharged a firearm causing death or great bodily injury (§ 12022.53, subd. (d)).  The trial court sentenced Silva to a term of 25 years to life in prison.

On direct appeal, a different panel of this court modified the award of presentence custody credit, and otherwise affirmed the judgment. (*Silva, supra*, B243796.)

On April 23, 2020, Silva filed a section 1170.95 petition seeking vacatur of his murder conviction.  Section 1170.95 was enacted as part of Senate Bill 1437, which "amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).)

In a minute order dated May 6, 2020, the trial court vacated a previously set hearing date, considered the section 1170.95 petition, and denied it.  The court found that Silva was convicted of first degree murder, that he was the actual killer, and that the jury was not instructed regarding the natural and probable consequences doctrine.

Silva timely appealed.

4

## DISCUSSION

The jury's first degree murder verdict was necessarily based on either the theory that the murder was premeditated, or the theory that Silva personally killed the victim in the commission of a robbery, or a combination thereof. Section 189 still permits conviction of first degree murder where the victim was killed in the commission of a robbery, and the defendant was the actual killer. (§ 189, subds. (a) & (e)(1).) Therefore, the amendments to the murder statutes (§§ 188, 189) made by Senate Bill 1473 would not stand as a bar to his conviction for murder. (§ 1170.95, subd. (a)(3); see also *People v. Cornelius* (2020) 44 Cal.App.5th 54, 58 (*Cornelius*), review granted Mar. 18, 2020, S260410 [actual killer ineligible for relief as a matter of law].) Because Silva was ineligible for relief as a matter of law, the trial court had authority to deny his facially sufficient petition—i.e. a petition that contained the basic averments required by subdivision (b)(1)(A), (B) and (C)[3]— without first appointing counsel. (See, e.g., *People v. Smith* (2020) 49 Cal.App.5th 85, 92, review granted July 22, 2020,

---

[3] Section 1170.95, subdivision (b)(1) provides: "The petition shall include all of the following: [¶] (A) A declaration by the petitioner that he or she is eligible for relief under this section, based on all the requirements of subdivision (a). [¶] (B) The superior court case number and year of the petitioner's conviction. [¶] (C) Whether the petitioner requests the appointment of counsel."

S262835; *People v. Verdugo* (2020) 44 Cal.App.5th 320, 332–333, review granted Mar. 18, 2020, S260493; *Cornelius, supra,* 44 Cal.App.5th at p. 58; see also *Dillon v. United States* (2010) 560 U.S. 817, 828–829 [holding Sixth Amendment inapplicable to sentence modification proceedings]; *People v. Anthony* (2019) 32 Cal.App.5th 1102, 1156 ["[T]he retroactive relief . . . afforded by Senate Bill 1437 is not subject to Sixth Amendment analysis"]; *In re Clark* (1993) 5 Cal.4th 750, 780 [constitutional due process guarantees demand appointment of counsel in postconviction proceedings "*if* a petition attacking the validity of a judgment states a prima facie case leading to issuance of an order to show cause"], italics added.)

## DISPOSITION

The trial court's order denying Silva's section 1170.95 petition is affirmed.


MOOR, J.


We concur:



RUBIN, P. J.                    BAKER, J.

6